ALBANY,
Feb. 1827.

Miller
v.
Plumb.

## MILLER *against* PLUMB.

ON error from the C. P. of *Monroe* county.

*Plumb* brought trover in the court below against *Miller*, for certain materials appertaining to a building for manufacturing ashes, viz: 2 potash kettles, 2 five-pail kettles, 2 troughs, 5 leaches, and 500 feet of boards. It appeared, at the trial, that while *Plumb* owned the ashery, the materials in question belonged to it. The two potash kettles were set in an arch of mason work with a chimney. The arches were set upon a platform ; but not fastened to the building. The troughs were sunk in the ground, so that the upper part was nearly even with the top. The boards were for an upper floor in the building. Two small kettles were not set in any way ; but stood in the building, and were necessary for use. In this state of things, the plaintiff below, on the 3*d* of *March*, 1824, articled to convey the premises on which the ashery stood, to the defendant below, on the 15*th* of *April* following, if the consideration money was paid ; by which day it was paid, and the defendant took possession. On the 11*th* of *February*, 1825, *Plumb* conveyed the premises to *Miller*, by deed of common warranty, without any reservation. *Miller* then demised the ashery ; the lessee took possession, and used the kettles until the building was burnt down ; and afterwards paid for the use.

The court below charged that the plaintiff, *Plumb*, was entitled to recover ; and a verdict and judgment was rendered for him accordingly. The defendant below excepted to the charge.

Immediately after issue on the record, which was of *June* term, 1825, the cause was continued thus : " And hereupon the proceedings thereof are continued, &c. until the 1*st Monday* of *October* next, (*the next term.*) Therefore,

As between vendor and vendee of land, all fixtures pass to the latter, though they were erected by the vendor for the purposes of trade or manufactures.

The rule is the same as between heir and executor.

But it is otherwise as between tenant and landlord or reversioner, and as between tenant for life and remainderman.

In the C. P. a record, immediately after the issue, (of *June* term, 1825,) continued the cause by a general continuance to *October* term (then) next ; and then said, " therefore, let there come a jury, &c. at *December* term next;" and then said, " at which day, &c. come the parties, &c. and the jurors, &c. also come, who, to speak the truth, &c." *Held*, that this referred the appearance of the parties and jury, and the rendition of the verdict, to *De-*

*cember* term ; and that there was no error, therefore, in the record. But that, at most, it was a mere miscontinuance, which was cured by the statute of amendments and jeofails.

ALBANY,
Feb. 1827.

Miller
v.
Plumb.

let there come a jury thereof, &c. on the *1st Monday* of *December* next, &c., (*the next term,*) at which day, &c. come the parties, &c. and the jurors, &c. also come, who, to speak the truth, &c." (*setting forth the verdict.*)

*J. Boughton,* for the plaintiff in error, contended that the fixtures passed by the conveyance; and cited *Bull. N. P.* 34; *2 Bl. Com.* 428; *Toll. L. Ex.* 197, 198, *and cases there cited;* 3 *East,* 51; 3 *Atk.* 13; 20 *John.* 32; 7 *Mass. Rep.* 432; 13 *John.* 404, 406.

*R. Beach,* contra, insisted that there was no formal error in the record; but if otherwise, the defect was cured by the statute of amendments and jeofails. (*3 John.* 183, 7 *id.* 467. 5 *id.* 89. 1 *Cowen,* 189.)

That the fixtures did not pass, he cited 6 *John.* 5; 3 *Atk.* 13.

*Curia, per* WOODWORTH, J. The first objection is to the form of the record.

A continuance is entered from *June* to *October* term; and then an award of venire to *December* term, then next; at which day came the parties; and the jurors also came. This is sufficiently plain, and must be understood, that the parties and jurors appeared at *December* term. Although, under the statute, the continuance might have been awarded from *June* to *December,* without any award of venire, the present entry is substantially the same; and, at most, is only a miscontinuance, which is cured by the statute of jeofails. (3 *John.* 183.)

The more important question is, whether the potash kettles, being affixed to the freehold, passed with the land. If they did, the court below erred; and the judgment must be reversed, unless the case falls within some of the qualifications or exceptions to the general rule. That rule appears to be well established; whatever is affixed to the freehold becomes part of it, and cannot be removed. Exceptions have been admitted between landlord and tenant; between tenant for life or in tail and the reversioner; yet the rule still holds between heir and

executor. (*Bull. N. P.* 34.) In *Holmes* v. *Tremper*, (20 *John.* 30,) chief justice *Spencer* says, " when a farm is sold without any reservation, the same rule would apply, as to the right of the vendor to remove fixtures, as exists between the heir and executor."

Lord *Ellenborough*, in the case of *Elwes* v. *Maw*, (3 *East*, 38,) lays down the law relative to fixtures as arising between three classes of persons : 1. Between heir and executor : 2. Between the executors of tenant for life or in tail and the remainderman, or reversioner : 3. Between landlord and tenant ; and observes that, " in the first case, the rule obtains with the most rigour in favor of the inheritance, and against the right to disannex therefrom, and to consider as a personal chattel, any thing which has been affixed thereto." In the latter cases, the reasons for relaxing the rule are obvious, upon motives of public policy. The tenant is thereby encouraged to make improvements, and the interest of trade promoted, while the landlord or reversioner has no cause to complain, inasmuch as the farm is restored to him in the same state as when he parted with it. A different rule would effectually check all improvements by the tenant, where it is known that, at the end of the term, they are to be surrendered to the landlord, or the reversioner of tenant for life. But the case between heir and executor, and vendor and vendee, is widely different. The ancestor or vendor has the absolute control, not only of the land, but of the improvements. The heir and executor are both representatives of the ancestor ; the vendor has an election to sell or not to sell the inheritance.

If he does elect to sell, he knows that, by law, the fixtures pass ; and there is no good reason why that law should interpose in his behalf, and protect him against the loss of improvements which he has deliberately chosen to part with. It is for reasons of this kind, I apprehend, the old rule of law seems still to hold. In 7 *Bac.* 258, this is expressly recognized. The author observes, that although in an action of trover by an executor against an heir, for a cider mill, tried at *Worcester*, before Lord C

B. *Comyns*, his lordship was of opinion that it was personal estate, and directed the jury to find for the executor ; yet lord *Mansfield* has observed, that that case, in all probability, turned upon a custom ; and that where no circumstances of that kind arise, the rule still holds in favor of the heir, seems fully established by the decision of the court of king's bench, in *Lawton* v. *Lawton*, (*Easter*, 22 *Geo. 3.*) The title of the case referred to, seems to be *Lawton* v. *Salmon*, and is to be found in 1 *H. Bl.* 259, *note* (*a.*) As reported, I do not find that lord *Mansfield*, in giving this opinion of the court, says that the case before *Comyns*, C. B. turned upon a custom. Yet the whole scope of the opinion is clearly against it. He recognizes the relaxation of the old rule as confined to cases between landlord and tenant, and tenant for life and remainderman ; where, for the benefit of trade, and as an encouragement to lay out money in improving the estate, there has been a departure from the old rule, which is no injury to the remainderman, because he takes the estate in the same condition, as if the thing in question had never been raised. He adds, " I cannot find that between heir and executor, there has been any relaxation of this sort, except in the case of the cider mill, which is not printed at large." It was a *nisi prius* decision, and evidently considered as not controlling the general law.

From this review, it appears to me that the case of vendor and vendee rests on the same ground as that of heir and executor ; and that the fixtures in such cases are not considered as personal property. I incline to think the evidence of conversion was sufficient ; and that the plaintiff was entitled to recover for some articles not annexed to the freehold ; but as damages were recovered for the whole, which cannot now be severed, the judgment in the court below must be reversed, and a *venire de novo* awarded by the common pleas of *Monroe*.

Judgment reversed.