LUTHER CROSS *v.* JEREMIAH T. MARSTON.

If personal property be attached by a third person to a building, of which such third person is the owner, and used as part of the furniture of the building, for the convenience of the business of its occupants, but be attached in such manner, that it can he removed without injury to the building, and without injury to the property, it does not thereby become a part of the freehold, so as to pass by deed from the owner of the building to a purchaser of the premises.

And though the owner of the chattel may have had knowledge of its being placed, by the owner of the building, in the situation in which it was, and may have permitted it to remain in such situation, without reclaiming it,

Cross *v.* Marston.

for a period of five years, and until after the owner of the freehold has sold and conveyed it, with its appurtenances, to a stranger, yet the owner of the chattel has not thereby lost his right to reclaim it, but may maintain trover for it against the purchaser of the building.

The question, in such case, is, whether the chattel have, by the manner of its annexation to the freehold, so far lost its *identity*, as to cease to have a legal existence as *personal property*; and if it have not, there can be no *inference* of acquiescence, on the part of the owner, in its becoming a fixture, if he have not stood by, and seen it sold to the purchaser, without objection.

In this case, a case of drawers and the sash of a show case were, by the consent of the owner of them, placed in a building, which the owner of the building was fitting up for a book store, and were, by the owner of the building, fastened in their places with nails, but in such manner, that they could be removed without injury to them, or to the building; the owner of the building then leased it for a bookstore, and it was occupied as such for five years, with the drawers and sash remaining as they were, when placed there, and then the owner of the building sold and conveyed it, by warrantee deed, with the appurtenances, to one who had, for four years, occupied it as a book store under a lease; and it was held that the drawers and sash still remained the personal property of the original owner of them, and that he might maintain trover for them against the purchaser of the building.

TROVER for a case of drawers and a show case. Plea, the general issue, with notice of special matter of defence, and trial by jury. On trial the evidence on the part of the plaintiff tended to prove the following facts.

A shop in the village of Montpelier was owned by one Jenkins, and by him occupied as a goldsmith's shop until the time of his decease, which was in 1836. Before his decease he had mortgaged the premises to the plaintiff and Ira Day, to secure a debt due to them as partners. While Jenkins was occupying the shop he had procured the drawers in question, made to fit in a particular part of his shop. The witnesses, who were accustomed to make such articles, testified that this case of drawers was made separate and entire and then placed in the spot where it was made to fit. At this time they were not in any manner fastened to the building. The show case stood upright upon the top of the drawers. Upon the decease of Jenkins, his administrator claimed those articles as personal property, and, notwithstanding the remonstrance of the plaintiff,—who

claimed them as fixtures belonging to the building,—he sold them at auction, and the plaintiff became the purchaser. After the sale the plaintiff removed the case of drawers to the store occupied by himself and Day, where it remained until the spring of 1838. In July, 1836, the plaintiff released his interest in the premises to Ira Day. In the spring of 1837 said Day, having then acquired the entire title to the premises, rented them to one Barker, for a post office; and Barker used the show case for the convenience of the post office,—the sash being separated from the case and used as a partition. In the spring of 1838 Day fitted up the building for a book store, and leased the same to one Clark. The case of drawers was put in its original place, and nailed to the wall, and open shelves were placed in the space above. The sash of the show case was used to cover an open book case, which was permanently fastened to the wall of the building,—the sash sliding in a place before the book case, and being fastened in by strips of board nailed above and below. Clark occupied the building in this manner for a year, or more, and then Day leased it, in the same condition, to the defendant, for the same purpose; and the defendant occupied it until April 22, 1843, when Day sold and conveyed the premises to him, by warrantee deed, describing the premises as " the land, and building thereon standing, with the appurtenances, beginning," &c. The partnership between the plaintiff and Day was dissolved in February, 1835; and in February, 1842, the plaintiff conveyed all his interest in the partnership property to Day. It appeared, that, during all the time since 1836, the plaintiff had resided in the village of Montpelier, and no question was made, but that he knew of Day's removing the case of drawers from the store to the shop aforesaid. The plaintiff claimed to recover only for the drawers and sash and glass,—and not for the case itself.

The court intimated to the counsel, that they should charge the jury, that these articles, under the circumstances of the case, were so far fixed to the freehold, that they would pass by the deed from Day to the defendant; and that, if the plaintiff knew of Day's putting them into the shop, in the situation described, as early as 1838, and acquiesced in their remaining there until after the sale, he would stand in no better situation, in regard to the property, than Day would, had he owned it; and that the jury might infer the ac-

quiescence of the plaintiff from his long silence, he knowing of that use. Whereupon a verdict passed for the defendant, with leave to the plaintiff to except to the foregoing charge and to move the Supreme Court for a new trial.

*J. A. Vail & W. K. Upham* for plaintiff.

1. We contend that the articles in question were not so far fixed to the freehold, as that they would pass from Day to the defendant by the conveyance of April, 1843, if they had belonged¦to Day. The chattels were, in their *nature, personal,* and were entirely separate and distinct from the building, until used for the convenience of the book store; and they might have been used elsewhere just as well. When the building was purchased by the defendant, and at the time of the conversion, the articles could have been taken out without being injured, and without injury to the building. They were, therefore, personal property, and not a part of the freehold. Amos & Ferrard on Fixtures, 69, and cases there cited. Ib. 189. *Wetherby* v. *Foster,* 5 Vt. 136. *Tobias* v. *Francis,* 3 Vt. 425. The word *appurtenances* is usual in all conveyances of lands and buildings; and it is not understood by it that the title to personal property is conveyed. *Raymond* v. *White,* 7 Cow. 319.

2. If the property would pass to the defendant by the conveyance from Day, if Day had owned it, we insist it would not pass, as against the plaintiff, under the circumstances appearing in the case. As between landlord and tenant, this property, beyond all question, was personal property,—if put in by the tenant,—and might have been removed by him during his term. The fact that the articles were *nailed* to the building does not alter their character; they were still personal chattels, and not a part of the freehold. *Davis* v. *Jones,* 2 B. & Ald. 165. *Raymond* v. *White,* 7 Cow. 319. *Reynolds* v. *Shuler,* 5 Cow. 323. *Cresson et al.* v. *Stout,* 17 Johns. 116. *Whiting* v. *Brastow,* 4 Pick. 310. *Taylor* v. *Townsend,* 8 Mass. 411. 2 Kent 343. The plaintiff stands in a more favorable situation than Day, the defendant's grantor, because he was the lawful owner of the property, and had no interest in the land or buildings conveyed, and no knowledge of the sale. He lent the property to Day, to be used for the *convenience* of Day's tenants in

the book store. The property was not fastened to the building by the plaintiff, nor had Day any authority to fasten it.

3. The fact, that the plaintiff permitted his property to remain in the building and be used by the defendant and other tenants of Day for about five years, does not amount to an abandonment of his title against the defendant. The plaintiff was neither landlord, nor tenant, heir, nor executor, but a purchaser for a valuable consideration, without notice of the sale.

*Heaton & Reed* for defendant.

1. In regard to the annexation of the articles in question to the building ;—

1. If not freehold, and of the realty, they must at least be adjudged fixtures, as far as the manner of their annexation goes to constitute them such; Amos & Fer. 2; Chit. on Cont. 281; *Horn v. Baker*, 9 East 215.

2. By Day's conveyance of April 22, 1843, the property in these articles passed to the defendant; *Miller v. Plumb*, 6 Cow. 665. *Colegrave v. Dias Santos*, 2 B. & C. 76, [9 E. C. L. 30.] As between Day and the defendant, vendor and vendee, the rule is the same as between executor and heir; *Miller v. Plumb, ut sup.; Holmes v. Tremper*, 20 Johns. 29. A mortgage of the real estate would have conveyed these articles; *Longstaff v. Meagoe*, 2 Ad. & El. 167, [29. E. C. L. 60;] *Union Bank v. Emerson*, 15 Mass. 159. A tenant for years, even, could not have removed them after his term; *Lee v. Risdon*, 7 Taunt. 191; *Lyde v. Russell*, 1 B. & Ad. 394, [20 E. C. L. 407;] Amos & Fer. 87. They would have passed to a creditor by a set off of the real estate on execution; *Goddard v. Chase*, 7 Mass. 432. They could not have been sold as chattels on an execution against the grantor, Day, before his conveyance; *Winn v. Ingilby*, 5 B. & Ald. 625, [7 E. C. L. 214.] A conveyance of the fee carries with it every thing, that is not expressly reserved; 4 Kent 468; 1 Leigh's N. P. 297; 1 Sumner 492; 9 Cow. 39.

3. Fixtures, or things fixed to the freehold, until severance, are part of the freehold. Amos & Fer. 10, 11, 185; 6 Cow. 668. And trover for fixtures will not lie; *Longstaff v. Meagoe, ut sup.*

4. Day's deed to the defendant described the premises granted, as "the land and building thereon standing, with the *appurtenances.*" The building had been fitted up by Day as a book store in the spring of 1838, leased by him to Clark, as such, one year, to the defendant four years, and then sold to the defendant as a book store. It was the evident intention of the parties to sell and buy the concern, as it then stood, and as it had stood from 1838 to 1843. *Farrar et al.* v. *Stackpole*, 6 Greenl. 154.

5. The only objection, that can be made to these views, is, that, these articles having once been chattels severed, and the personal property of Cross, the act of no other person could divest him of this property. But it is a doctrine, as old as the Year Books, that personal property, by whomsoever annexed to the freehold, becomes realty. Brooke's Abr., Trespass, *pl.* 23, cited in Amos & Fer. 10; Britton, c. 33, and Bracton and Fleta, as cited in Amos & Fer. 241, n. *b*; *Brown* v. *Sax*, 7 Cow. 95. The conveyance by Day to the defendant, in the manner set forth, and without notice to the defendant of Cross's claim, as thoroughly made these articles freehold, as was any part of the building.

II. We have proceeded thus far, without the aid to the case of Cross's knowledge of and acquiescence in the acts of Day, and insist that, without these, the defendant was entitled to a verdict. But upon these points there is no error in the decision of the court.

1. Between Cross's knowledge, without objection and his acquiescence in the acts of Day we can see no difference, under the circumstances. And certainly from the first the jury had a right to infer the last. Neither can there be any difference between the legal effect of the annexation by Day with Cross's knowledge and acquiesence, and the effect of the annexation by Day himself. And if this position is correct, *Goddard* v. *Bolster et al.*, 6 Greenl. 427, is a case directly in point.

2. Cross, by this acquiescence, has consented to all the legal consequences of the acts of Day; and, having put it in the power of Day to convey these articles as real estate, he must now be bound by such conveyance. *Storrs* v. *Barker*, 6 Johns. Ch. R. 166; *Wendell* v. *Van Rensselaer*, 1 Ib. 354.

Cross v. Marston.

The opinion of the court was delivered by

HEBARD, J.   There is no question made by either side, but that the articles in controversy in this suit, at the time the plaintiff became possessed of them, were personal property; but it is insisted that they became attached to the building, and passed by the deed from Day to the defendant on the 22d of April, 1843.   The plaintiff purchased the articles in question in 1836, while he and Day had a mortgage upon the building, in which they then were, and took the case of drawers from the building and carried them to his store.   In 1838, Day, who had then acquired the whole title to the building, carried the case of drawers back to the building and leased the building for a book store; and at this time the case of drawers was put in its original place and nailed to the wall,—but in such manner, that it might be taken away without injury to the case of drawers, or to the building; and in this situation it remained until 1843, when Day deeded the premises to the defendant;—and it appears, also, from the case, that the plaintiff was not ignorant of the disposition and use of the case of drawers.

The case was disposed of by the county court, by their informing the parties, that they should instruct the jury, that these articles were so far fixed to the freehold, that they would pass by Day's deed to the defendant; and that, if the plaintiff knew of Day's putting them into the shop, in the situation described, as early as 1838, and acquiesced in their remaining there until after the sale, he would stand in no better situation, in regard to the property, than Day would, had he owned it; and that the jury might infer the *acquiescence* of the plaintiff, in the use to which Day put the articles, from his long silence,—he knowing of that use.   The argument of the case has proceeded mainly with reference to, the fact, whether this property, by the use to which it had been put, had become a *fixture*.

This question about *fixtures* most frequently arises between *landlord and tenant*.   As between *grantor and grantee*, it is more proper to inquire whether the *thing* was so attached to the freehold, that it will pass by the deed; and such is the case in numerous instances, when the same thing might have been taken away by the tenant.   And in all these cases, the party fixing the chattel to the freehold, was, at the time, the owner of it.   Such was not the fact in

this case. The thing was originally a chattel, and the plaintiff was the owner; and there is no proof that he ever parted with his title to it, except by the act of Day, and his own acquiescence in that act. And the inquiry here is, whether that can change the ownership of the property, while the property itself preserves its identity.

It is a principle of law, in relation to this subject, that the owner may pursue his property, wherever he can trace it. But when the property has *lost its identity*, it ceases to have its legal existence;—as, if one man should convert a quantity of bricks, and erect them into a house, and then deed the house to a third person, these bricks will have lost their *identity*,—they are so changed in their character that they cease to be chattels, and the owner cannot pursue them against such third person. But in this case I apprehend there was no such change of the property, as would give it a different character. The nailing it to the building did not incorporate it into and make it a part of the building. It was merely a part of the furniture of the building, and, as the case finds, capable of being taken away without injury to the property, or to the house. No one would doubt, probably, but what the outgoing tenant would have the right to take property similarly situated.

That, as between Day and the defendant, this property would have passed by the sale, providing Day had owned it, cannot be decisive of the question; for if so, it would apply to all sales,—as when B. sells the horse of A. to C.; as between B. and C. the title to the horse passes; but A., being the owner, may pursue the horse, notwithstanding the sale. The main question, in relation to this part of the case, is, whether the property has lost its *identity*; if it has, the plaintiff cannot pursue it; if it has not, he may pursue it into whatever hands it may have chanced to come.

The defendant relies somewhat upon the case of *Goddard* v. *Bolster*, 6 Greenl. 427. But, in relation to that case, whatever there may be peculiar to it, the ground upon which it was put does not conflict with the plaintiff's claim in this case. That decision goes upon the ground that the plaintiff's brother, in the erection of the mill, and the putting in the mill stones and mill irons, acted but as the agent of the plaintiff; and, as the mill was on the plaintiff's land, and erected by the plaintiff's agent, which was the same as if erected by the plaintiff himself, the mill and all·its attachments were

the property of the plaintiff. No such consideration is involved in the case now before us. The plaintiff did not put the draw- ers into the building himself, nor was Day his agent in doing it. The plaintiff had no interest in the building, nor in the land upon which it stood. This case, then, loses all its analogy to the case cited. *Miller* v. *Plumb*, 6 Cow. 665, presents only the same ques- tion, that would arise, if Day claimed this property and had sued the defendant for it. *Colegrave* v. *Dias Santos*, 9 E. C. L. 30, is to the same effect; the question was, whether the vendor could re- cover of the vendee for fixtures, after having given up the possession. *Longstaff* v. *Meagoe*, 29 E. C. L. 60, was decided upon the author- ity of the case of *Colegrave* v. *Dias Santos*.

The conclusion, therefore, to which we come, is, that this prop- erty was not so attached to the *freehold*, as to change its character, or lose its legal existence. It once being the property of the plain- tiff, it will continue to be his, until he has parted with his interest in it by his own consent, or by the operation of some law. And that presents the inquiry in relation to the other part of the charge of the court. The jury were to infer an acquiescence on the part of the plaintiff in the disposition, which Day made of the property, from his long silence.

If Cross had stood by and seen Day sell the property, without re- monstrating, he would be estopped from claiming it of the purchas- er; but I do not suppose that any thing is to be inferred, in a legal point of view, unfavorable to his claim, simply because he has de- layed to assert his claim, unless barred by the statute. As the claim is not barred by the statute, and as the case does not find that the plaintiff ever stood by and saw Day attempt to pass over the proper- ty, without objecting, we do not see how he has, either by his own consent, or by the operation of law, parted with his interest in the property, or forfeited his right to pursue and claim his property, wherever he can find it.

Indeed, the question of acquiescence, it seems to me, has nothing to do with the case. If Day could transfer a title in the property to the defendant, it was because it had *ceased* to be a chattel interest; if that was the condition of the property, it was the attaching the property to the building, that wrought that *metamorphosis;* there- fore the property became changed, and the plaintiff lost his interest

in it, the moment the nail was driven, if he ever lost it. But we have already said that this was not such a use of the property, as was inconsistent with the nature and character of the property itself, or with the plaintiff's claim and title to it.

Judgment reversed.