Margaret A. Weathersby *v.* Fabius H. Sleeper et al.

---

MARGARET A. WEATHERSBY *v.* FABIUS H. SLEEPER *et al.*

1. WRIT OF ERROR TO HIGH COURT FROM CIRCUIT COURT ON APPEAL FROM COUNTY COURT.—On appeal from the County Court to the Circuit Court, a writ of error will lie from the judgment of the Circuit Court to the High Court of Errors and Appeals.

2. REPLEVIN: BOND MUST BE TAKEN BY OFFICER EXECUTING THE WRIT.— The statute which gives the remedy by action of replevin clearly contemplates that the officer executing the writ shall take from the plaintiff or defendant a bond for the forthcoming of the property, and shall return the same; the failure to take and return the bond will not render the proceedings void, but on motion the action will be dismissed.

3. LIEN ON PERSONAL PROPERTY FOR MONEY ADVANCED.—Money advanced by one party to another to enable him to erect and prepare a steam mill and apparatus, creates a debt from the party to whom the money is advanced, but is not a lien on the steam mill and apparatus.

4. FIXTURES: HOW DETERMINED IN THE ABSENCE OF USAGE AND CONTRACT. —Whether a chattel attached to the freehold is personal property or a fixture, in the absence of an established usage or special contract, must be determined by taking into consideration its nature, mode of attachment, purpose for which used, the relation of the party making the annexation, and other attending circumstances indicating an intention to make it a temporary attachment or a permanent accession to the realty; this latter intention must affirmatively and plainly appear before the legal quality of the chattel will be changed.

5. SAME: CHATTELS NOT FIXTURES WHEN PLACED ON LAND OF ANOTHER BY CONTRACT OR CONSENT.—A building or other fixture, which is ordinarily a part of the realty, is personal property when placed on the land of another by contract or consent of the owner, and it need not be a trade fixture.    43 Mo. 300; 8 Pick. 402; 10 Maine, 429.

Margaret A. Weathersby *v.* Fabius H. Sleeper et al.

ERROR to the Circuit Court of Annite county.   Hon. James M. Smiley, judge.

*Neilson & Bramlett* for plaintiff in error.

The statute in reference to a bond is merely directory.   The defendant has the preference, and no time is specified; but if he does not choose to execute a bond and retain possession of the property, the plaintiff can then execute a bond and gain possession.   The object of a bond is, that should either party desire possession of the property *pendente lite*, there would be security that the property would be forthcoming upon determination of the suit; and this object is certainly more fully accomplished by the property remaining in possession of the sheriff—the legal custodian.

Cases might arise where the party complaining, having a just cause of action, would be unable to execute a bond; and the defendant failing to do so, the injured party then—if a bond is *absolutely essential*—would be without a remedy.   It was certainly not the intention of the law that such a case should ever arise under it.

The general rule is, that a tenant having once affixed anything to the premises, he cannot afterwards sever it; but this rule has many exceptions, and the case here presented comes within them.   The evidence, however, independent of any exceptions, can not be said to prove that the property was a fixture, or that it was placed upon the freehold for any other than temporary purposes.

But there are exceptions in favor of trade or manufacture, wherein a tenant may remove such things as he has affixed to the freehold for the purpose of trade or manufacture.   Wharton's Dic. 308; Williams on Executors, vol. i. 616; 2 Kent's Com. 437 *et seq.; Richardson* v. *Borden.*

The property in this case is such as is used for the purpose of trade, very often put up temporarily, and when the timber is exhausted in the immediate neighborhood, it is then removed to another locality where timber is plentiful and convenient. The position of Sleeper, in placing the property where found,

was that of a lessee from L. L. Weathersby, or a co-lessee with him, holding the property under S. C. Weathersby, the owner of it. The probable and real intention of the party or parties in putting the property on the land was, that they would use it for a while and then return it to the owner. No injury could result in the removal of this property. The property also was put upon the land with the consent of the owner of the freehold; then the owner of the property had the right to remove it. 5 S. & M. 291. Margaret A. Weathersby certainly had such an interest in the property as entitled her to possession. Sleeper only claims the property because he has expended money on it; but, till enforced in the proper courts, such claims can certainly give the holders no right of possession to the property.

*E. Safford* for defendants in error.

A bond in replevin must be executed by the plaintiff, if defendant refuses, otherwise the suit cannot be prosecuted. This is evident from the following authorities: Bac. Abr., vol. vi. 53. It is a common-law action (ib. 57), and until altered by statute, the defendant could not retain the property; and before a seizure by the sheriff, the plaintiff had to execute a bond *plegii de prosequendo.* The first alteration by statute was by act of West. 2, 13 Edw. I., stat. 1, cap. 2, requiring another bond, called the *plegii de returni habendo.* Thus it is evident that a bond under the English practice is indispensable. Bac. Abr. vol. vi. pp. 57, 58, 59, *et seq.*

By legislative enactment, the English practice has been changed in other particulars; but we are to hold as law on this subject the common law as amended by our statutes. The English statutes are of no force in this State. How do the statutes of this State affect the common law on this subject? For the purpose of giving the defendant an opportunity of holding the property *pendente lite,* our statute requires that the sheriff shall seize the property *before* any bond is executed, and then redeliver it to the defendant on his giving bond; but, if he fail to give bond, then the plaintiff shall execute bond. And what

Margaret A. Weathersby v. Fabius H. Sleeper et al.

evil of the common law is here sought to be remedied? Plainly, it was to avoid the injustice of taking property out of the hands of one person and placing it in those of another before there was a judicial determination of the right to the property. And if the suit can go on without any bond being required, it is an establishment of an entirely new law.

That a bond is required, is plainly evident from the very terms of our statute. It provides what shall be the judgment when the defendant has retained possession and given bond; also what shall be the judgment when plaintiff has given bond. Rev. Code, art. 5, and art. 6, 396. A judgment in replevin must conform to one or the other of these forms. Nothing is said of a judgment where no bond is given, or where the sheriff retains the property.

Again, the statute provides that when the property replevied is delivered to the plaintiff, his bond shall contain a condition to *save harmless the sheriff* for replevying the property.

If both plaintiff and defendant fail to give bond, the sheriff is thus compelled to answer for what may be the wrongful act of the plaintiff in suing out the writ; and clearly, if the sheriff is liable for damages for a wrongful seizure, and plaintiff refuses to execute a bond of indemnity, the sheriff could virtually dismiss the suit by returning the property to the defendant; or, if he felt disposed to keep up litigation by corruptly aiding the plaintiff, who might be unable or unwilling to give bond, he could do so by keeping possession of the property.

Again, art. 9 speaks of a " proper and sufficient bond," and that the bond shall be returned with the writ, etc. Provision is also made in art. 10 for better security on bond, etc.; all plainly showing that a bond is absolutely essential, and required.

Under the latter article, if a plaintiff fails to give a sufficient bond, he may be nonsuited; but if he has given no bond at all, he may proceed with his suit according to the decision of the County Court in this case!

It is the wise and general policy of our law, that a bond be given when one person takes property out of the possession of another before trial of the right of property.

The action of replevin lies only for "goods or chattels" (Rev. Code, art. 1, 395; Bac. Abr., vol. vi. 69), and not for things annexed to the freehold. Ib.; Bouvier's Law Dictionary, title *Replevin;* 2 Kent's Com. 342–4 and *notes; Snicker* v. *Warren*, 2 Kernan's N. Y. Rep. 170. In the leading case of *Elwes* v. *Mawe*, 3 East's Rep. 38, steam mills, etc., are referred to as fixtures. See this case with full notes annexed, in the American edition of Smith's Leading Cases. Also 17 Johns. Rep. 116; 2 Wal. U. S. Rep. 609. The property sued for in this case is annexed to the freehold.

The only question on this point is, *does the evidence in the case show, that at the time the writ of replevin was sued out the mill was a fixture?* It does; and it cannot be recovered by an action of replevin. The rights of parties cannot change it.

Plaintiff in replevin must have a general or special property in the *goods taken.* 1 Chitty's Pl. 163; Bac. Abr. vol. vi. p. 68. Plaintiff here did not pretend to have any claim till November, 1867, while Sleeper took possession in the month of May preceding; then how could she have any property in the "goods taken," if goods they really were? None.

Even if the property in question is a chattel, the plaintiff had no right to recover; for the reason that the property, at the time of the alleged purchase by her, was in possession of Sleeper, *claiming it adversely to plaintiff's vendor;* and the sale was therefore *void* for champerty. *Vide Davis* v. *Herndon*, 39 Miss. 484, and authorities there cited.

PEYTON, J., delivered the opinion of the court.

In an action of replevin, the plaintiff in error obtained judgment in the County Court of Amite county against the defendants in error, for a steam saw and grist mill, with the engine, boilers, and timber-wheels. Upon the trial of the cause, the defendants moved the court to nonsuit the plaintiff, for the reason that the sheriff had not returned a bond with the writ of replevin, as the statute requires. The motion was overruled by the court, and judgment rendered as aforesaid. From this judgment the case was taken to the Circuit Court by ap-

peal, and that court reversed the judgment of the County Court, and remanded the cause for further proceedings. And hence the cause is brought to this court by writ of error.

The defendants in error here move the court to dismiss the writ of error for want of jurisdiction in this court to entertain it.

A writ of error lies from the final judgment of the Circuit Court in all cases, unless prohibited by law; and we are not aware of any provision of law which inhibits the prosecution of writs of error from the judgments of the Circuit Court in cases of appeal from the County Court. There is no provision in the act to establish County Courts, which makes the judgment of the Circuit Court conclusive upon the parties litigant. Either party to any judgment of any inferior tribunal, from which a cause may be taken to the High Court of Errors and Appeals, may have the same reviewed by that court upon writ of error.

But it is insisted by counsel for defendants in error, that the judgment of the Circuit Court, reversing the judgment of the County Court, and remanding the cause for further proceedings in that court, was not a final judgment from which a writ of error would lie. We cannot agree with counsel in this view of the character of that judgment. The judgment of reversal was certainly the final action of the Circuit Court upon that appeal, and one from which a writ of error may properly be prosecuted to this court. We hardly regard this as open question, since the decisions of this court in the cases of *Lyles* v. *Barnes*, 40 Miss. 608, and *Lester* v. *Harris*, 41 Miss. 668. In these cases, the jurisdiction of this court to entertain writs of error from judgments of the Circuit Court in cases of appeal from the County Court, was not questioned, but only the mode of trial in the Circuit Court was regarded as erroneous, and for which alone the judgments in those cases were reversed. The opinion of the court in the case of *Hendricks* v. *Dyer*, cited in support of the motion, sustains the doctrine of the cases of *Lyles* v. *Barnes* and *Lester* v. *Harris ;* and the judgment, as entered in that case, is at variance with the reasoning of the

47

court, and the principles laid down in that opinion, and must therefore, have been inadvertently entered. As we entertain no doubt of the jurisdiction of this court to entertain the writ of error in this case, the motion to dismiss it will be overruled.

Having disposed of the preliminary question of jurisdiction, we will now proceed to the consideration of two important questions presented by this record for our determination; 1. Is it necessary, in an action of replevin, that the sheriff, in taking property into possession under a writ of replevin, should take a bond from the plaintiff or defendant, conditioned to have the property forthcoming to abide the judgment of the court, and to respond for damages? 2. Are the articles sued for in this action fixtures, or personal chattels?

With respect to the first question, the statute giving the acion of replevin in other cases than those of distress for rent, clearly contemplates that a bond shall be taken by the officer executing the writ of replevin, and returned with it; and without it, the proceedings, though perhaps not absolutely void, would be defective and erroneous.

It provides that the sheriff shall deliver the goods and chattels taken under the writ of replevin to the plaintiff, upon his entering into bond to the defendant, with sufficient security, in double the value of the property, to be ascertained by the valuation of the sheriff, conditioned that he will prosecute the writ with effect, and without delay make return of the property to defendant, if return thereof be adjudged, and pay the defendant such damages as he may sustain by the wrongful suing out of said writ, and also such costs as may be awarded against him, and save harmless the sheriff for replevying the property; unless the defendant shall enter into bond with sufficient security in like penalty, payable to the plaintiff, conditioned that the property shall be forthcoming to satisfy the judgment of the court. Rev. Code, 395, art. 3.

When the property shall have been permitted to remain in possession of the defendant, if the plaintiff recover, the judgment of the court shall be against the defendant and his sure-

ties, that they restore the property to the plaintiff, or pay him the value as assessed by the jury, and also for such damages as shall have been assessed by the jury for the wrongful taking or detention.

And if the plaintiff in replevin, to whom the property has been delivered, fail to prosecute his suit with effect, the jury shall assess the value of the property, and the damages sustained by the defendant; and the judgment of the court shall be against the plaintiff and his sureties, that they restore the property to the defendant, or pay him the value thereof so assessed, and also the damages so assessed for wrongfully suing out the writ.

From these provisions it plainly appears, that, whatever be the result of the suit, whether in favor of the plaintiff or defendant, the judgment is invariably rendered against the failing party and his sureties, and this could not be done without bond with sureties.

It is the imperative duty of the sheriff to take a bond from one of the parties to the action, upon the execution of the writ of replevin, not only to protect the interests of the parties litigant, but to indemnify himself for any damage he may sustain by taking any property by virtue of the writ. And so important is it deemed to have a sufficient bond in such cases, that the statute provides, in the 10th article, for supplying a new bond in case the old one should at any time be deemed insufficient; that, if the bond given by the plaintiff shall be adjudged insufficient, he shall give a new bond, and in default thereof, the defendant shall be entitled to proceed, and enter a judgment, as in case the plaintiff should be nonsuited; *à fortiori* would he be entitled to such judgment, where no bond had ever been given in the case.

This brings us to the consideration of the second question,— Whether the articles in controversy in this suit are fixtures, or personal chattels.

The testimony on this part of the case is substantially as follows :

That the defendants were in possession of the mill, and ap-

paratus in controversy, at the time of the commencement of this suit. That the boilers attached to the mill were incased in brick for a support, and that, in addition to the brick foundation into which they were imbedded, there were two posts at each end of the boiler; that there were crossbeams or plates extending from posts on each side of the boilers, and in those beams were inserted iron bolts which extended to the boilers, and aided in supporting them. That the engine was bolted down with iron bolts to heavy timbers, called engine-bed, which timbers were firmly inserted into the earth; that there were also pipes leading to a pond for the purpose of conducting water to the boilers. There were also pipes extending to a well, and all the machinery was connected together in the usual way for steam mills; that it was possible for all the machinery to be taken and moved without material damage to the freehold. That Solomon C. Weathersby owned the said steam mill in January, 1867, and agreed to loan it to his brother, Lewis L. Weathersby, for an indefinite time, on condition that he would repair it and move the said mill to the neighborhood of Liberty, to be put up and run by said Lewis and F. H. Sleeper, one of the defendants, on land which said Sleeper was to furnish; but said Lewis failed to make said repairs. That some time in November, 1867, the said Solomon C. Weathersby sold the mill to the plaintiff, and delivered her possession of it. That she paid him for the same twenty-five hundred dollars in cash, and that he had paid out money for expenses incurred in putting up and running the mill where it is now located; that in November, 1867, the said Sleeper stated that he only claimed the mill for a debt of three hundred dollars, which Lewis Weathersby had received from him for the purpose of having the machinery repaired, but which said Lewis had appropriated to his own use on his farm; that the mill was worth about eighteen hundred dollars; that the defendant Sleeper received the said steam mill from Lewis L. Weathersby sometime between the 1st of March and the 1st of May, 1867, and that he had expended between eight hundred and a thousand dollars in erecting the mill where it now is; that the mill was to have been

erected by said Lewis Weathersby, but said Sleeper agreed to advance him the money for the purpose of hauling and repairing it. The said Sleeper told the plaintiff he was in possession of the mill, and would not give it up to any one, until he was paid between eight hundred and a thousand dollars, which Lewis Weathersby owed him ; that he had been in possession of land on which the mill was built ever since January, 1867, and that the same had never been moved since it was first put up.

The testimony goes to show that the said steam saw and grist mill was put up on the land with the consent of the owner of the freehold, and that the defendant Sleeper claimed to hold the property on account of moneys advanced by him to Lewis Weathersby, and expended in erecting the mill.

As the said Lewis L. Weathersby was, by agreement, to have put up the mill, the money expended by Sleeper in putting it up, and the same advanced by him to said Weathersby for that purpose, create a debt of Weathersby to him, and do not constitute a lien on the property sued for in this action.

The term fixtures has always been applied to articles of a personal nature, which have been affixed to land ; and questions respecting the right to them principally arise between three classes of persons :

1. Between the heir and executor ; and there the rule obtains with most rigor in favor of the inheritance, and against the right to consider as a personal chattel anything which has been affixed to the freehold.

2. Between vendor and vendee ; and there the strict rule as to fixtures that applies as between heir and executor, applies equally as between vendor and vendee, and mortgagor and mortgagee.

3. Between landlord and tenant ; and there greater latitude and indulgence are extended in respect to fixtures erected by the tenant for the purposes of trade, called trade fixtures, which he may remove at any time before the termination of his tenancy.

Whether an article is personal property or a fixture, must be determined by taking into consideration its nature, mode of

attachment, purpose for which used, and the relation of the party making the annexation, and other attending circumstances indicating the intention to make it a temporary attachment or a permanent accession to the realty. And inasmuch as it requires a positive act on the part of the person making the annexation to change the nature and legal qualities of a chattel into those of a fixture, the intention to make the article a permanent accession to the realty must affirmatively and plainly appear; and if it be a matter left in doubt or uncertainty, the legal qualities of the article are not changed, and the article must be deemed a chattel.    In some instances the intention to make the article a fixture may clearly appear from the mode of the attachment alone, as where a removal cannot be made without serious injury to the property by the act of severance. But where the attachment is but slight, and does not enter into the physical structure of the realty, this intention must be gathered from the nature of the article and the other attending circumstances.

The criterion of a fixture above mentioned is subject to qualification in some respects.    Whatever would otherwise be the rights of the parties connected with an article which has been attached to the realty, they are liable to be controlled by an established custom or special agreement of the parties.    The parties are presumed to be cognizant of an existing usage or custom, and to act with a tacit reference to it.    And an article attached to the land may be a fixture or a chattel, according to the special agreement of the parties.

By an application of the criterion here adopted to the case before the court, there is no difficulty in determining the character of the property in controversy.    The means by which the mill with engine and boilers were attached to the realty, and those used to keep the machinery steady and in its proper place for use, were such as to admit of its removal without injury to any property, or even inconvenience.

That this steam saw and grist mill, with its engine and boilers, was not intended as a permanent accession to the freehold, and immovable as such, is too clear to admit of doubt. Neither

the mode of the annexation nor the use to which it was applied indicated any design to change the character of the property. The nature of the property itself, the removal of it from place to place, its liability to be taken away or disposed of, show that it was not intended to be made a permanent accession to the freehold.

It has been repeatedly held, that a building or other fixture, which is ordinarily a part of the realty, is personal property when placed on the land of another by contract or by consent of the owner. And it need not be a trade fixture. *Hines* v. *Armint*, 43 Missouri, 300; *Asher* v. *Williams*, 8 Pick. 402, and *Russell* v. *Richards*, 10 Maine, 429. Hence we conclude that the articles in controversy in this action were personal chattels, and the proper subject of an action of replevin.

And as it is conceded by the plaintiff's counsel, that no bond was taken upon the execution of the writ of replevin, we think the County Court erred in overruling the defendant's motion to nonsuit the plaintiff for want of a bond, and for that reason the Circuit Court did not err in reversing the judgment of the County Court, and remanding the cause for further proceedings therein.

The judgment of the Circuit Court is affirmed.