## ARGUED AND DECIDED

### IN THE

# SUPREME COURT OF MISSISSIPPI,

### APRIL TERM, 1873.

48   1
d74  452

## THOMAS S. TATE v. SIDNEY B. BLACKBURNE.

1. FIXTURES—TENANTS—VENDEES.—To the precise rules of the common law respecting fixtures, there are many modern exceptions in favor of tenants and for the benefit of trade. In favor of tenants, the greatest liberality is indulged; while, as between vendor and vendee, heir and executor, and mortgagor and mortgagee, the strictest constructions obtains.

2. FIXTURES—GIN-STAND—UNEXPRESSED INTENTION TO REMOVE.—A mere unexpressed mental intention by the owner of real estate to remove fixed machinery and gearing erected by him on the freehold, irrespective of acts showing such intention, does not so meet the requirements of the law as to justify him in claiming that such machinery and gearing do not pass with the realty. Such intention must be made out by facts, words and circumstances. A cotton gin being necessary to a cotton plantation, and being erected thereon, if not expressly excepted, passes to the purchaser of the plantation.

3. TENANTS.—Removals of structures erected by tenants, for special trades or occupations, must be done during the tenancy, and not after its termination.

ERROR to the circuit court of De Soto county. FISHER, J.

The opinion of the court contains a full statement of the case.

*White & Chalmers*, for plaintiff in error.

The rule that whatever is annexed to the freehold becomes a part thereof, is most rigorously enforced

against him who places it there as owner of the soil. Against such owner there are no exceptions, if the article be put there for the better enjoyment of the freehold.   English v. Foote, 8 S. & M. 444; Perkins et al. v. Swank et al. 43 ib. 349.   That gin stands, running gear and cotton presses are fixtures, is settled in this and other states.   Richardson v. Borden, 42 Miss. 71, and cases cited.

The facts that the machinery was denominated "portable," that Harrell was the owner of two plantations several miles apart, that he intended to carry this machinery from one to the other, and that he bought "portable" machinery on that account, do not change the quality of the whole machinery as fixtures.

A man might build an erection in such a manner as that, if a hundred years afterward it became necessary to remove it, it might more readily be done, and yet this would not change its character as a fixture.   There must be an intention on the part of the builder of so doing.

*Thos. H. Johnston,* for defendant in error.

In determining whether a chattel is so annexed to the freehold as to become a fixture, reference must be had to the nature of the chattel itself, the position and probable intention of the party in placing it on the land; and if the attending circumstances indicate an intention to make temporary attachment, and not a permanent accession to the realty, the article will be a chattel merely and not a fixture.   Richardson v. Borden, 42 Miss. 71; Ford v. Cobb, 20 N. Y. 344; Murdock v. Gifford, 18 ib. 28; Mott v. Palmer, 1 N. Y. 564.

The fact that Harrell permitted the articles to remain where he had put them, until taken away by appellee, does not constitute an abandonment of his original intention in regard to them.

TARBELL, J.:

Tate sued Blackburne, in an action of trespass, to recover the value of a gin-stand, cotton press and running gear, taken by the latter from the land of the former, and the question is, whether these articles were fixtures or chattels. The facts are substantially these: Tate sold the land from which these articles were taken to one Harrell, in 1861, reserving in the deed of conveyance a vendor's lien for the purchase money. While so owning and occupying this land, Harrell placed thereon the property in controversy. The gin-stand is the common one in use in the cotton regions, and put up in the usual mode. The press and gearing are modern inventions. The press is called by the witness, Harrell, an "Ingersoll hand-press." The gearing is described by the same witness as the "improved patent double pinion, portable horse-power," but in a printed circular given in the record it is described as "our improved patent double pinion horse-power," the word portable being omitted from the printed description. There was a roof to the building where this gin-stand was used, and the usual lint room. The gearing was fastened with great care. There were two timbers imbedded in the ground, and upon these the running-gear was secured by being let into notches cut in the two sills, and wedged. The whole seems to have been put up more securely than the old mode, and no more portable than the machinery formerly in use, save in this, that it was of lighter weight, requiring less force to move it.

In 1867, Harrell sold these articles, by bill of sale, to defendant, Blackburne, to pay a debt contracted in 1859.

In 1868, Harrell went into bankruptcy, and the land upon which these articles were erected was sold by order of the bankrupt court, Tate becoming the purchaser. Harrell had paid Tate nothing on the lands.

At the time of the sale of these articles by Harrell to Blackburne, the latter agreed that the former might retain them on the place to gin the crops of 1867 and 1868. In the latter year the plantation, with the articles in controversy, was rented by Harrell to a tenant, who attorned during the year to Tate on his purchase of the place in bankruptcy. In January, 1869, while this tenant was ginning his crop, the property in dispute was removed by defendant, Blackburne.

On the trial, Harrell testified, that in the annexation of this property, his intention was to make it serve two plantations, by removal from one plantation to the other; but the property was never removed after its erection. It does not appear that this intention was ever, at any time, declared to any one.

Neither does it appear that the sale by Harrell to Blackburne was ever made known, or was, in fact, known to any others than the parties thereto, until the moment of removal.

The jury returned a verdict for the defendant. There was a motion for a new trial, which was overruled. Hence, the case comes to this court. It is assigned for error: That the verdict was contrary to the law and the evidence; that the court erred in overruling the motion for a new trial; and, that the court erred in giving the latter clause of the charge asked by the defendant, viz.: "But if Harrell intended to erect the running gear, gin-stand and press, so that they could be removed from one place to another, then they were not fixtures, and Harrell could sell them as he could any other property."

In the whole range of jurisprudence there is, perhaps, no subject more difficult of definite rules than the matter of fixtures. The common law rule, it is true, is precise, and, were there no exceptions thereto, would be conclusive upon this case. But many exceptions have been sustained in favor of tenants, for the benefit of

trade and for the protection and encouragement of modern improvements in machinery.    In favor of tenants, the greatest liberality is indulged, while, as between vendor and vendee, and mortgagor and mortgagee, the strictest construction obtains; and this latter rule must be applied here, as against the claim that the articles in controversy are chattels.    To break the force of the undisputed and long-recognized rules referred to, it is sought to establish two facts, viz.: 1st. That this property was "portable;" 2d. That in its addition it was the "intention" of Harrell to remove it annually, making it serve two plantations.    As to portability, this property seems to have been more thoroughly imbedded in and attached to the freehold than the older styles, which were no less portable than the modern patents, save in this, that the superseded structures were clumsily built, and would require greater force to remove them than their lighter successors.    The term "portable," as descriptive of these articles, appears to have been interpolated by the witness into the description given by the patentee.    The "intention" of Harrell, as as far as is shown, was a mental one only, unexpressed and undisclosed by word or act.    From its erection, this property was not removed until taken by defendant, after the land had been returned to the ownership and possession of plaintiff.    No such intention appears to have been uttered at the time this property was attached, nor at any other time.    It is not shown that preparations were made on the other plantation of Harrell for the reception and use of these articles; such an intention finds no expression in words or in any act in connection therewith.    So far from it, all the acts of Harrell with reference thereto indicate a contrary intention.    No notice, actual or constructive, was given of such an intention, or of the sale to Blackburne.    This secret, mental intention of Harrell, is more than rebutted by every act of his bearing upon the question, and out of

which a legal intention can be deduced and established. It is apprehended that a mere unexpressed mental intention, irrespective of acts, does not meet the requirements of the law; but that such an intention must be made out by acts, words and circumstances. There is an old adage, that "acts speak louder than words;" and this wise saying finds an apt illustration in the facts of this case, and the more so, that there are not even words to contradict the acts.

In addition to the facts already stated, the plantation upon which this property was placed was without these very essential and necessary articles. No cotton plantation is complete without them, and they add greatly to the value of every such place. These valuable additions were made by the owner and holder of the legal title, in possession, and who was also mortgagor to the present plaintiff. The title of Harrell would have been perfected in himself upon payment of the mortgage to Tate. Aside from the mental intention which Harrell says existed in his mind when he made this annexation, all the known facts and all the public acts of Harrell in connection with such annexation, indicate an intention to make permanent additions for the benefit of the plantation. And this intention, thus indicated, is the one which ought to prevail. An unexpressed mental intention is a myth; it is intangible; it is subject to no law, and cannot be tried. To give it efficacy, would invite to frauds and perjury which no court or criminal code could reach, as the evil-minded could defy the ingenuity of legislators and of grand juries.

The authorities cited in support of the verdict have been carefully examined. The case of Mott v. Palmer, 1 Comst. 564, to which counsel invites our special attention, was this: Mott was the owner of a farm, a part of which he leased to a neighbor named Brown. By agreement between the two, Brown cut rails on his own land to inclose that rented of Mott, with leave to the

former to remove the rails whenever he saw fit to do so. The rails were held by the court of appeals to be personal property, and the reasoning of the learned judges who delivered opinions in the case is strongly adverse to the claim of the defendant in the case at bar. Ford v. Cobb, (20 N. Y. 344) was this: O. W. Titus was in possession of a lot of land in the salt regions of New York, whereon he had erected salt works. For the purpose of manufacturing salt, Titus bought of Cobb & Co. a lot of iron salt kettles, on credit, securing payment by a chattel mortgage on the kettles. It was recited in the mortgage that the kettles were to be set up on the land of Titus for the manufacture of salt. If the notes were paid at maturity the mortgage was to be void; otherwise to be an absolute transfer to the mortgagees. Titus was to remain in possession until default, unless the mortgagees should consider themselves insecure, in which case they were given a right to take possession of the kettles. The mortgage was duly filed, according to the laws of New York, in the proper clerk's office. Titus thereupon set the kettles in arches, upon the salt block, in such manner that they could not be removed except by tearing off a portion of the upper bricks of the arch and by prying the kettles out by a plank and bars. It was proved to be a general custom to take kettles from the arch and to re-set them every season before commencing boiling; and that these kettles had been taken out and re-set before the defendants took them; and that it would have been necessary again to take them out and re-set them the ensuing fall if the defendants had not taken them. The salt block, with these kettles thereon, passed into the hands of a third party. Upon failure to pay for the kettles they were taken by the mortgagees by virtue of their mortgage thereon. Thereupon the then owner of the land instituted his action to recover the value of the kettles thus taken from his land. *Held,*

the kettles were personal property. It will be seen that the case cited belongs to a class of cases where, by prior agreement of parties, annexations to the realty were to remain chattels, and, therefore, is unlike the case at bar; and besides, it was stated by the court that if, instead of the mortgage, Titus had paid for the kettles upon the purchase and had put them up as owner, without the agreement that they should remain personal property, the manner in which they were annexed to the freehold was such as would have converted them into a parcel of the realty. Several adjudications are cited in illustration of this declaration, and they are all cases where the annexation was made under an agreement between the owner of the land and the party making the erection, that the property should remain chattels. The court very properly say, "that there must necessarily be a limitation to this doctrine." In Murdock v. Gifford, 18 N. Y., the question was whether looms in a woolen factory were chattels or fixtures. "The looms in question were merely placed on one of the floors of the factory and were fastened to the floor by means of ten screws in each loom, merely for the purpose of keeping the said looms in their places and in a steady position, and not otherwise, during the operation and working of the looms, which were worked by a band carried by fixed machinery." The contest was between creditors of the owner of the looms, and the question was determined, in the absence of evidence of intention, upon the naked principles of law, from the manner in which the looms were attached to the building. No specific intention was collectable, and the case was unembarrassed by evidence on the subject. Applying the rules of the common law, it was held, that the looms were personal property. The court say: "It is true that, upon this subject, all the cases cannot be reconciled, and that, perhaps, no rule can be laid down, in abstract terms, which will furnish a clear guide in every case."

These embrace all the authorities cited by the defendant in error, and they each acknowledge the difficulty in the way of general rules for this class of cases, and concede that every case must depend more or less upon its own particular facts and circumstances. They also repeat the common law rule, " that everything that is fixed to the realty is a part of the realty," and discuss the instances wherein a relaxation of this rule has been indulged. It is a conceded principle, that the common law doctrine is rigorously enforced as between heir and executor, in favor of the former against the latter, and that the same rule applies between vendor and vendee, and between mortgagor and mortgagee, while the greatest indulgence in favor of considering particular articles as chattels, as between landlord and tenant, is allowed. Removals by a tenant, however, of structures for purposes of trade, must be made during his term, and cannot be made after its termination except by consent of the landlord. As between vendor and vendee, it is stated as a rule by Hill on the Law of Fixtures, that "everything which is annexed to land by the owner of the land is considered as constituting a part thereof, and if the property in the land be conveyed to another, the annexations will pass with it." Another rule given by Hill, is this : " Whether articles are personal property or not must then be determinable, and plainly appear from an inspection of the property itself, taking into consideration its nature, mode of attachment, purpose for which used, and the relation of the party making the annexation, and in some instances perhaps other attending circumstances indicating to make it a temporary attachment or a permanent accession to the realty." In the case at bar, an inspection of the property, its nature, mode of attachment, use, the relation of the party making the annexation, the circumstances attending such annexation, the silence of the party as to an intention of removal, and of the sale,

and its non-removal until after the purchase of the realty by Tate, who was also the mortgagee of Harrell, all indicate a permanent accession to the realty. As we understand this case, the rules of law governing it are not overcome, or, in other terms, this case is not brought within the exceptions to the general rules, by the unexpressed mental intention of Harrell, and the portable character attempted to be given to the fixtures, nor is it within the class of cases where the character of the property is fixed by agreement of parties. But, in the cotton states, the property in controversy is held to be realty, and to pass therewith, and there is nothing in the case at bar to take it out of the operation of these cases and of the recognized rules on the subject. Certainly the defendant possessed only the rights of Harrell, who, upon the facts stated in the record, could not pretend to a legal right to this property, as chattels, after the land had passed into the possession and ownership of Tate. Even as between landlord and tenant, the assertion of a right to remove this property was too late, as, if such had been the relations of the parties, the right of severance and removal ceased with the term. An actual severance and sale by Harrell, while holding the legal title, would have presented a totally different case from that now before us. The effect of notice of the pretended sale by Harrell and Blackburne, upon the claim of Tate is not involved in the absence of proof thereof, or of knowledge on the part of Tate, that Harrell considered and treated this property as personalty. For these reasons we think the verdict was contrary to the law and the facts. 1 Barb. 542; Amos & Heard on Fixtures; Hill on the Law of Fixtures; 43 Miss. 349; 6 Cow. 665; Washb. Real Prop. Fixtures; 2 Stew. 478; 42 Miss. 71; ib. 732; 8 S. & M. 444; 7 How. 421; 6 Greenl. (Me.) 154; etc.

*Judgment reversed and cause remanded.*