MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., Plaintiff-Appellant,

v.

Clarence N. DALE, Jr. and Barbara Camin Dale, Defendants-Appellees.

No. 81–4307
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1982.

As Amended on Denial of Rehearing Feb. 24, 1982.

Dudley H. Carter, Columbus, Miss., for plaintiff-appellant.

J. Gordon Flowers, Hunter M. Gholson, Columbus, Miss., for defendants-appellees.

Before CLARK, Chief Judge, RUBIN and SAM D. JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This diversity case involves only the question whether, under Mississippi law, a radio transmission tower, affixed by the tower's lessee to a concrete base on leased real estate, became a fixture so that, on termination of the real estate lease for nonpayment of rental, the tower became the landowner's property. Applying familiar state law, the district judge found that it had become a fixture principally because of its annexation by bolts to the slab. We conclude, however, that under Mississippi law annexation to realty is a necessary but not sufficient condition for conversion to fixturedom, that it is only one of the factors to be considered, and that the other considerations all pointed against depersonalization. We, therefore, reverse.

Motorola Communications & Electronics, Inc. leased a radio transmission tower and an accompanying lighting kit, which we refer to together as "the tower," for five years to Miss-Corp. Services, Inc. ("MCS"). Motorola filed the appropriate financing statements covering the tower as equipment, thereby perfecting its security interest in it. Motorola did not, however, make the fixture filing required to perfect its security interest in the tower in the event it were later found in fact to be a fixture. *See* Miss. Code Ann. §§ 75-9-313(1)(b); 75-9-313(4)(b); 75-9-402(5) (1980 Supp.) (codifying §§ 9-313(1)(b), 9-313(4)(b) and 9-402(5) of the 1978 Official Text of the Uniform Commercial Code).

Three weeks later, Clarence N. Dale, Jr., and his wife, Barbara Camin Dale, entered into a five-year lease with Industrial Communications Corporation ("ICC") entitling ICC to erect and operate the tower on land owned by the Dales. The record does not disclose how ICC came into possession of the tower, but it shows that the same person was the president of both MCS and ICC.

As erected on the Dales' property, the tower is over 400 feet tall. Its base is attached by means of a "pier pin and plate" to a concrete slab measuring ten feet by ten feet and extending eight feet into the ground. Five sets of three guy wires are attached to the tower at the following levels: 60′, 140′, 220′, 300′ and 380′. The wires are attached to the ground by anchor rods sunk six feet below the surface at points 146 feet and 230 feet out from the base of the tower. With its anchoring system, the tower occupies 7.96 acres.

Not quite two years after the signing of the leases, MCS and ICC defaulted on their rent payments to both Motorola and the Dales. Motorola sought to take possession of the tower, but the Dales refused it permission to enter their premises. Consequently, Motorola filed this suit in replevin seeking permanent possession of the tower and damages for its conversion.

The district court, deciding the case on cross-motions for summary judgment, quoted *Ziller v. Atkins Motel Co.*, 244 So.2d 409 (Miss.1971), for the proposition that, "A fixture was originally personal property, but by reason of its annexation to or use in association with real property has become a part of the realty as by means of concrete, plaster, nails, bolts or screws." *Id.* at 411 (citing 35 Am.Jur.2d, Fixtures § 1 (1967) and Black's Law Dictionary 766 (4th ed. 1951)). Relying on this statement of the law alone, the court concluded that the tow-

er had been "annexed to [the Dales'] real estate in a manner which [was] sufficient" to render it a fixture under Mississippi law; therefore, under Miss. Code Ann. § 75-9-313(4)(b) (1980 Supp.), the Dales' interest in the tower was superior to Motorola's security interest, which was unperfected because of the absence of a fixture filing.

The Mississippi jurisprudence, read as composite, makes the status of property as personalty or fixture depend on the intention of the party who accomplishes annexation to real estate. Annexation is circumstantial evidence of intent. It is indispensable but not conclusive.

Over a century ago, in *Stillman v. Hamer*, 8 Miss. (7 Howard) 421 (1843), the Mississippi Supreme Court noted that "many exceptions and qualifications have been engrafted upon" the rule that "whatever is fixed to the land is thereby made a part of the realty.... The greatest relaxation of the rule is admitted in the case of landlord and tenant, in favor of the latter ...." *Id.* at 422. Mississippi law on the subject was described as "less certain and fixed, than any other department of the law" in *Richardson v. Borden*, 42 Miss. 71, 75 (1868). Its principles were, however, there explicated: "reference must be had to the nature of the thing itself; the position of the party placing it where found; the probable intention in putting it there, and the injury which would result from its removal; and we must also consider the object of the party in placing the article on the premises with reference to trade, agriculture or ornament." *Id.* at 75-76. "[T]he rule of construction ... is relaxed and liberal ... as between landlord and tenant," *id.* at 76, presumably because it is not likely that the tenant intends to convert his personalty into the landlord's property.

These propositions are supported and further amplified in *Weathersby v. Sleeper*, 42 Miss. 732 (1869), perhaps the leading Mississippi case on fixtures:

> Whether an article is personal property or a fixture, must be determined by taking into consideration its nature, mode of attachment, purpose for which used, and the relation of the party making the annexation, and other attending circumstances indicating *the intention to make it a temporary attachment or a permanent accession to the realty.* And inasmuch as it requires a positive act on the part of the person making the annexation to change the nature and legal qualities of a chattel into those of a fixture, *the intention to make the article a permanent accession to the realty must affirmatively and plainly appear; and if it be a matter left in doubt or uncertainty, the legal qualities of the article are not changed, and the article must be deemed a chattel.* In some instances the intention to make the article a fixture may clearly appear from the mode of attachment alone, as where a removal cannot be made without serious injury to the property by the act of severance. But where the attachment is but slight, and does not enter into the physical structure of the realty, this intention must be gathered from the nature of the article and the other attending circumstances.

*Id.* at 741-42 (emphasis supplied).

Intention is again emphasized as the "leading test" in *Perkins, Livingston & Post v. Swank*, 43 Miss. 349, 362 (1870). *See also Boone v. Mendenhall Lumber Co.*, 97 Miss. 554, 52 So. 584 (1910) (engine attached by the landowner to a concrete foundation with steel bolts held to retain chattel status); *Tate v. Blackburne*, 48 Miss. 1 (1873).

The application of these principles has been consistent except as they were modified for the "assembled industrial plant" doctrine during the pre-World-War-II decades. Succinctly stated, this doctrine held that a real estate mortgage on an industrial plant extended not only to the realty as such, but also to all the machinery and equipment on the premises necessary for its operation as an industrial plant. This was not an arbitrary rule of convenience, but a realistic interpretation of the intention of the parties to a mortgage. It was a recognition that the terms "realty" and "freehold" include such appurtenances as give value to the real estate for the purpose of securing the mortgage loan. The doctrine was not applied to landlord-tenant situations, nor would it be applicable to the erection of a single tower, for a tower is manifestly not an industrial plant, and does not contain component parts necessary for the production of any product or merchandise. *See M.L. Virden Lumber Co. v. Sherrod*, 167 Miss. 297, 139 So. 813 (1932); *Waldauer v. Parks*, 141 Miss. 617, 106 So. 881 (1926).

In the case relied on by the district court as sole authority, *Ziller v. Atkins Motel Co., supra,* annexation is the only factor mentioned but the decision indicates no intention to modify or overrule the prior jurisprudence. The property in question was affixed by the landowner himself and the trustee under a deed of trust asserted that it had become a fixture. In the mortgagee-owner relationship, the "strictest construction applies." *Tate v. Blackburne, supra,* 48 Miss. at 5.

Whether conversion to fixture status has been effected is, under Mississippi law, a finding of fact. *Ziller v. Atkins Motel Co., supra,* 244 So.2d at 411. We assume that, under federal procedural law, which governs notwithstanding *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the same rule obtains. As the district court did not apply governing Mississippi legal standards, we exercise plenary review as to both the law and the facts. *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 703 (5th Cir. 1981).

The parties in this litigation had no dealings with each other and we cannot, therefore, look to their interaction. The controlling factor appears, however, to be the intention of the party who attached the tower to the concrete slab, ICC or MCS. Some evidence is found in the lease between Motorola and MCS, which provides that the tower will remain Motorola's property and "not be considered for any purpose to be part of [the] land, ... or other places of installation and may be removed by Motorola in accordance with the terms of this lease at any time."

The lease between the Dales and ICC showed both the Dales' knowledge that the tower was personal property and some desire nonetheless to capture its value in the event of default. It provides that, upon expiration, the lessee may remove the tower "and *other* personal property" (emphasis supplied) if not in default. If, however, the lessee is in default, the lessors may remove "all of said personal property" to other lands at lessee's cost or sell it and apply the proceeds to the lessee's account.[1]

Despite its size the tower can be removed merely by detaching the bolts and guy wires. The slab on which it stands will remain but no damage will be done to the real estate by disassembling the tower and carting it away.[2] Motorola's failure to effect a fixture filing does not convert the tower into a fixture, for under Uniform Commercial Code section 9–313(1)(a) (1978 Official Text) (codified at Miss. Code Ann. § 75–9–313(1)(a) (1980 Supp.)), it has been repeatedly held that whether an article is a fixture, bringing it under the requirements of that section, is a matter to be determined by the law of the State. *See, e.g., Fink v. Wemco Corp. (In re Fink),* 4 B.R. 741, 742 (Bkrtcy.W.D.N.Y.1980); *Corning Bank v. Bank of Rector,* 265 Ark. 68, 70, 576 S.W.2d 949, 950 (1979). *See also* J. White & R. Summers, Uniform Commercial Code § 25–8, at 1055 (2d ed. 1980) (Section 9–313(1)(a) is "merely an invitation to read the ... local case law on what is and what is not a fixture."). In other words, whether an article is a fixture must first be determined before the necessity of a fixture filing can be ascertained. Because it is clear that the tower was not a fixture, and was never intended to be one, a fixture filing would have been redundant to the proper filing on the personal property.

For these reasons, the summary judgment in favor of the Dales is reversed. The case is remanded for entry of a summary judgment declaring the tower to be person-

1. The lease also provides that it shall be "kept confidential as between the parties hereto," but a skeleton lease may be recorded. The record does not explain the reasons for this provision.

2. The Dales assert that their property is damaged by the cement pad and equipment house remaining on their land after the tower has been disassembled. While this may be true, the pad and house were erected by the Dales' lessee pursuant to the terms of the land lease. Because we find that the land lease expresses an intent to treat the tower as personal property, it and the even more specific tower lease not only control the tower's non-fixture character as between Motorola and the landowners, but also control the respective rights of the parties, upon default, to remove the tower from the leased lands. Because Motorola is not a party to the land lease and the tower lease clearly delineated its right to do all it did (remove its tower), Motorola has no responsibility to the Dales for residual damages to the lands caused not by removal of the tower, but by the lessee's activity in constructing the pad and house.

al property and for further proceedings consistent with this opinion.

REVERSED and REMANDED.