950 So.2d 1035 (2007)
CHECK CASHERS EXPRESS, INC., Title Loans Express, Inc. and Robert J. Pope, Jr., Appellants,
v.
Boyce CROWELL, Appellee.
No. 2005-CA-01631-COA.
Court of Appeals of Mississippi.
February 20, 2007.
*1038 Robert Binnion Andrews, Port Gibson, attorney for appellants.
James Andrew Yelton, Batesville, attorney for appellee.
Before LEE, P.J., IRVING, BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. Check Cashers Express, Inc., Title Loans Express, Inc. and Robert J. Pope, Jr. (collectively "Tenants") appeal the judgment of the Chancery Court of Panola County which found them liable for damages to property leased from Boyce Crowell. On appeal, Tenants argue that the partition walls in the building at issue were not fixtures that became part of the realty, but were personal property, which Tenants had a right to dismantle and take upon vacating the premises. Additionally, Tenants argue that the trial court erred in awarding compensatory damages for the removal of the interior walls and an air conditioning unit and in awarding attorney's fees. We find no reversible error and affirm the chancery court's judgment.

FACTS AND PROCEDURAL HISTORY
¶ 2. Boyce Crowell filed a complaint against Tenants in the Panola County Chancery Court on August 2, 2004, claiming breach of contract on a lease and conversion. This lawsuit arose when Tenants dismantled walls and interior doors and windows from within the leased building in Batesville, Mississippi when the lease expired, contrary to specific provisions in the lease and the expressed request of the current landlord. Tenants also dismantled and took an air conditioning unit which they had bought and installed. After trial, *1039 a judgment was entered against Tenants in the amount of $23,572.67.
¶ 3. In June 1999, Tenants had originally negotiated and signed a five-year lease with David Bailey, the owner of the premises. In March 2001, Crowell purchased the building at issue from Bailey. Crowell had thus been Tenants' landlord since that time, under the original lease agreement. No additional lease provisions were added nor was the original lease altered. Key provisions in the lease agreement are contained in paragraph 7 (tenant shall "refrain and forbid any other person from destroying, defacing, damaging or removing any part of the premises. Tenant shall not make any alternations[alterations] to the premises . . . without the prior written consent of the Landlord"), paragraph 10 ("Landlord will maintain roof only"), paragraph 12 ("Upon termination of this lease, Tenant agrees to return the premises to the Landlord in good repair . . . except for ordinary wear and tear"), and paragraph 19 ("This Lease supersedes any oral or written agreements regarding these premises"). The lease expired July 1, 2004.
¶ 4. Crowell did not renew Tenants' lease. Crowell and Tenants were in the same businesses-the pay-day/check cashing loan and title loan business. Tenants claim that they had an oral agreement with the original owner, Bailey, whereby they received permission, around the time the lease was signed in 1999, to construct partition walls within the premises. Also, Bailey was told that these walls would be removed when Tenants moved out. The walls are required by state law to keep check cashing businesses separate from title loan businesses. Tenants, upon signing the lease, proceeded to hire a contractor to install the walls. The contractor was aware that the walls would be removed eventually, so the walls were supposedly installed in as "soft" a manner as was possible while still being safe. He testified that this entailed putting nails in the floor and walls, and screws in the ceiling. The owner of Check Cashers testified that this was standard procedure in its regular course of business when moving into a new building. Specifically, three full-scale interior walls from floor to ceiling were installed with several partition walls that did not reach the ceiling, as well as interior windows, doors and a long counter-top. A monitoring alarm system was installed, as was electrical wiring in the interior walls.
¶ 5. When Crowell purchased the building from Bailey in March 2001, these alterations were already completed. Additionally, Tenants claimed that when the building's air conditioning broke, Crowell did not replace it, so Tenants purchased and installed a new unit themselves. In May of 2004, when Tenants' lease was not renewed, Crowell's lawyer sent a letter to Tenants specifically requesting them not to remove any "improvements or attachments to the premises, including the walls, doors, and windows," without consulting either Crowell or his lawyer. It is undisputed that Crowell intended to open a check cashing and title loan business similar to Tenants' immediately upon the expiration of the lease on July 1, 2004.
¶ 6. This dispute arose when Tenants vacated the premises a few months prior to the expiration of the lease, while continuing to make lease payments, and proceeded to move their business to another location in Batesville. At this time, Tenants removed and/or destroyed all of the interior walls, doors, windows, lights, security system, and the new air conditioning unit, without first either informing or asking permission from Crowell. Tenants justified these actions because they considered these items "trade fixtures" and thus not a part of the realty, but personal property. *1040 Indisputably, Tenants offered to sell these interior "trade fixtures" to Crowell for his new business. When Crowell declined, the owner of Check Cashers instructed a contractor to tear out all of the interior walls, doors, windows and counter tops constructed.
¶ 7. Once the building was fully vacated by Tenants, Crowell proceeded to repair and remodel the building for his own new business. He claimed that in removing the walls and other items, Tenants damaged the walls, ceiling, carpet, tile and electrical system of the premises. Further, Tenants had reinstalled the inoperable air conditioning unit in place of the new one they originally purchased, but took, upon expiration of the lease.
¶ 8. On August 12, 2005, after a bench trial, the chancellor entered an order of judgment against Tenants for $23,572.67, including $5,893.17 in attorney's fees. From this judgment, Tenants perfected this appeal.

STANDARD OF REVIEW
¶ 9. The standard of review for a chancellor's determinations is well established. "A chancellor's findings will not be disturbed unless he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Ferrara v. Walters, 919 So.2d 876, 881(¶ 8) (Miss.2005) (citations omitted). Otherwise, this Court has no authority to disturb the chancellor's factual conclusions when supported by substantial evidence. Sanderson v. Sanderson, 824 So.2d 623, 625(¶ 8) (Miss.2002). A chancellor's conclusions of law are reviewed de novo. Ferrara, 919 So.2d at 881(¶ 8) (citing Weissinger v. Simpson, 861 So.2d 984, 987(¶ 11) (Miss.2003); In re Carney, 758 So.2d 1017, 1019(¶ 8) (Miss. 2000)).

DISCUSSION
1. Whether the trial court erred in finding the partition walls were fixtures that became part of the realty.
¶ 10. Tenants argue that the chancery court applied an incorrect standard of law in deeming, in its findings of fact and conclusions of law, that the partition walls were fixtures. Additionally, Tenants state the chancellor's ruling was not supported by substantial evidence. The basis of this argument is the unwritten agreement the Tenants claimed they had with the original owner, Bailey, that Tenants had permission to add and remove the walls and other items. Thus, Bailey had knowledge that the intent of Tenants was to put in temporary walls which would not be strongly affixed to the building and thereby not fixtures.
¶ 11. A "fixture" is defined as "[a]n article in the nature of personal property which has been so annexed to the realty that it is regarded as a part of the real property." Black's Law Dictionary 638 (6th ed.1991). "A thing is deemed to be affixed to real property when it is . . . permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." Id. To determine if the item is a fixture or personal property, the following must be taken into account:
its nature, mode of attachment, purpose for which used, and the relation of the party making the annexation, and other attending circumstances indicating the intention to make it a temporary attachment or a permanent accession to the realty. . . . In some instances the intention to make the article a fixture may clearly appear from the mode of the attachment alone, as where a removal *1041 cannot be made without serious injury to the property by the act of severance.
Weathersby v. Sleeper, 42 Miss. 732, 741-42 (1869).
¶ 12. The general rule in Mississippi has long been that once a tenant has affixed an item to the premises, it becomes part of the realty. Simmons v. Bank of Miss., 593 So.2d 40, 42 (Miss.1992); Stillman v. Hamer, 8 Miss. (7 Howard) 421, 422 (1843). Several well-established exceptions to this general rule have been articulated. When applied to landlords and tenants, especially in a commercial setting when tenants have built structures on the land during their tenancy, the general rule is applied with leniency in favor of the tenants. Simmons, 593 So.2d at 42 (citing Waldauer v. Parks, 141 Miss. 617, 625, 106 So. 881, 882 (1926)). Furthermore, "trade fixtures," those placed on the premises by the tenant for the purpose of trade or manufacture and not intended to irrevocably become a part of the realty, are generally considered personal property of the tenant/lessee. Wright v. Rub-a-Dub Car Wash, Inc., 740 So.2d 891, 896(¶ 13) (Miss.1999) (citing Stillman, 8 Miss. (7 Howard) at 422).
¶ 13. Tenants maintain that the exceptions to the general rule apply here, and the materials removed were personal property that they had every right to dismantle. Tenants argue that the items removed walls, partition walls, light fixtures, built-in counters, windows, and an air conditioning unitare "trade fixtures," and that Tenants gave notice to the original landlord that it intended to remove these items upon the termination of its lease.
¶ 14. However, the cases cited by Tenants regarding the exceptions to the general rule of fixtures do not address the following distinguishing factors found in our case: first, there was a lease expressly prohibiting alterations or damage and removal of items on the premises, and no written agreement to the contrary, regardless of whether Tenants had an oral side-agreement with the initial landlord Bailey, and second, when the walls and other items were removed by Tenants, there was substantial damage to the premises, regardless of whether Tenants "intended" the walls to be temporary. The Simmons court notes that in a lessor-lessee context, the parties may agree regarding removal of improvements and their agreement will be enforced by the courts. Simmons, 593 So.2d at 42. Thus, when there is a lease agreement a court must look to the provisions of the lease agreement to determine the rights and duties of the parties.
¶ 15. Tenants allegedly had permission, albeit oral, with the first landlord, Bailey, to construct the partition walls and other items, but they did not have permission from the second landlord, Crowell, to remove the walls. In fact, Tenants were expressly prohibited from removing their additions by the May of 2004 letter from Crowell's lawyer. Also, the lease states the tenant shall "refrain . . . from destroying, defacing, damaging or removing any part of the premises." The tenant is not allowed to "make any alterations to the premises . . . without the prior written consent of Landlord." Even if there was an oral agreement with Bailey allowing Tenants to remove the walls, Bailey was not the landlord at the time this dispute arose, and Tenants did not obtain the consent of the current landlord, Crowell, to dismantle the walls. Finally, the lease states it "supercedes any oral or written agreements regarding these premises." Thus, we affirm the chancery court's determination that Tenants breached their lease agreement with Crowell.
*1042 ¶ 16. Further, in removing the walls and other improvements, Tenants damaged the building's walls, ceiling, and flooring where the improvements were attached. This damage supports the factual findings that the improvements were of a permanent nature, and thereby "fixtures." The mode of attachment alone can be the sole factor in determining whether an item is a fixture, especially when removal would cause serious damage to the surrounding permanent property. Weathersby, 42 Miss. at 742. In our case, the evidence introduced at trial shows damage from the removal of the additions. Some sections of the tile flooring were missing where the walls connected to it, exposing the building's concrete foundation. The carpet was ripped and pulled out in places exposing concrete. Wires dangled from the ceiling, and the ceiling contained holes where electrical wires had been placed. Tenants minimize this damage, but concede that "minor damage" occurred during removal of the items. We agree with the chancery court that the damage was more substantial than "minor." Damage during removal of the so-called "temporary" walls was to such a great extent that we consider their attachment permanent. The items removed, including the partition walls, were fixtures.
¶ 17. We find that the chancellor did not apply an incorrect standard of law. There was substantial evidence for the chancellor to rule that the partition walls were fixtures and thus became part of the realty. This issue is without merit.
2. Whether the trial court erred in awarding damages for breach of contract based on removal of the partition walls and air conditioning unit.
¶ 18. Tenants state that they upheld their lease obligation to leave the property "in good repair . . . except for ordinary wear and tear." They argue the damage done to the building was minor. Because the new air conditioner was removed from the property without damage, Tenants maintain it was their personal property and not a permanent fixture. Further, they argue that Crowell did not mitigate his damages by repairing the damage, but instead replaced materials, thereby getting his building "remodeled" at the expense of his competitor, Check Cashers. Finally, Tenants contend that the award of attorney's fees, in lieu of punitive damages, was unwarranted.
¶ 19. The measure of damages for breach of contract and property damage can be either the reasonable cost of replacement or repairs, or diminution in value. Bell v. First Columbus Nat'l Bank, 493 So.2d 964, 970 (Miss.1986). The plaintiff must prove either of these measures with a reasonable certainty and the damage award must not unjustly enrich the plaintiff. Id.
¶ 20. The chancellor awarded Crowell $17,679.50 in compensatory damages and $5,893.17 in attorney's fees. We find the amounts awarded by the chancellor for compensatory damages to have been proved with reasonable certainty. Admittedly, some of the charges for repairs and replacements claimed by Crowell were disallowed by the chancellor in his findings of fact and conclusions of law. The chancellor found the damages were mitigated because Mr. and Mrs. Crowell completed some of the manual repair work on the building themselves.
¶ 21. Additionally, central air conditioning units have traditionally been categorized as fixtures, as have built-in counters, and may not be removed and considered personal property in a landlord-tenant situation. See In re Cooperstein, 7 B.R. 618, 622 (Bkrtcy.N.Y.1980) (citing The Law of Personal Property 531-53 (3rd ed.1975)); Crumbley Grocery Co. *1043 v. Ferguson, 159 Miss. 861, 869-70, 132 So. 737, 739 (1931). When the air conditioning unit broke, the landlord Crowell was not under a legal obligation, according to the lease with Tenants, to replace it. The lease spoke of the landlord's maintaining the roof only and was silent as to the air conditioning system. The chancery court properly found that the air conditioning unit had become a fixture; therefore, Tenants did not have the right to remove the working air conditioner upon their departure, even though they purchased it, and replace it with the old, inoperable unit. The cost of an air conditioning system was properly included in the compensatory damages. Thus, we cannot find that the chancellor erred in his computation as to compensatory damages.
¶ 22. As for attorney's fees, the chancellor awarded one-third the total compensatory damages for "two separate and distinct reasons": a contractual provision for attorneys's fees located in paragraph 13 of the lease and his finding that "it is no question that the [Tenants] acted with malice and therefore the attorney's fees are in the nature of punitive damages." Attorney's fees may be awarded in a contract case where provided for by the contract, by statutory authority, or where "punitive damages are also proper." Aqua-Culture Tech., Ltd. v. Holly, 677 So.2d 171, 184 (Miss.1996) (quoting Greenlee v. Mitchell, 607 So.2d 97, 108 (Miss. 1992)). Where the conduct of the party "was of a nature such as to make the awarding of punitive damages appropriate," the "actual awarding of punitive damages is not a prerequisite for the awarding of attorney fees." The "trial judge may validly find that . . . the plaintiff should not have to suffer the expense of litigation forced upon it by the defendant's conduct, and therefore determine that attorney fees should be awarded." Id. at 184-85; see also Walker v. Murphree, 722 So.2d 1277, 1283(¶ 25) (Miss.Ct.App.1998) (quoting Aqua-Culture, 677 So.2d at 185) ("attorney fees may be awarded in cases in which the awarding of punitive damages is proper"). We find that while the chancellor erred in relying on the lease provision as authority for attorney's fees in this case, it was proper for the chancellor to award attorney's fees in lieu of punitive damages.
¶ 23. Paragraph thirteen of the lease requires the Tenants "to pay any costs and attorney fees incurred by Landlord in defending any lawsuit or other action brought in regard to . . . injuries [to persons] or damage [`to property caused by Tenant or any other person on the premises with Tenant's permission.']" (Emphasis added). In this case, the landlord was prosecuting rather than defending the action; therefore, the plain terms of the lease do not authorize an award of attorney's fees.
¶ 24. The chancellor, as finder of fact, however, determined that Tenants acted "with malice" in their conduct regarding the premises. This finding is sufficient to support the award of attorney's fees in lieu of punitive damages in the case before us. For punitive damages to be awarded in a contractual setting, the plaintiff must prove by a preponderance of evidence that the breach of contract was either caused by "an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights." Hamilton v. Hopkins, 834 So.2d 695, 703(¶ 26) (Miss.2003) (citations omitted). The chancellor's finding of malice on the part of Tenants is supported by the record and is a sufficient basis for the award of attorney's fees in lieu of punitive damages. This issue is without merit.
3. Whether to grant Crowell's motion for attorney's fees incurred on this appeal.
¶ 25. At the end of Crowell's brief, he moves this Court to award attorney's *1044 fees incurred in response to Tenant's appeal, arguing that he is a "forced participant in the appellate process." We deny that request. Crowell admits that he can find no Mississippi case law supporting his proposition that attorney's fees awarded at the trial level for malicious conduct should also be awarded on appeal. We have authority to award damages, including attorney's fees, for frivolous appeals pursuant to M.R.A.P. 38. In this case, while the chancellor found the conduct of the Tenants in defacing the leased property justified punitive damages, which were awarded as attorney's fees, we find nothing frivolous in Tenants' appeal. Crowell does cite authority, Knight v. McCain, 531 So.2d 590, 597 (Miss.1988), for the proposition that affirming an award of contractual attorney's fees entitles the appellee to an attorney's fee under the contract on appeal. Id. We have determined, however, that the contractual provision at issue does not cover the circumstances of this case. Accordingly, Crowell's request for attorney's fees for the appeal of this case is denied.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF PANOLA COUNTY IS AFFIRMED. APPELLEE'S MOTION FOR ATTORNEY'S FEES ON APPEAL IS DENIED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.