WALDAUER *v.* PARKS *et al.*[*]

(Division B.        Feb. 8, 1926.)

[106 So. 881.        No. 25303.]

1. FIXTURES. *Rule that whatever is affixed to land becomes part thereof applied with much leniency between landlord and tenant.*
   There are exceptions and qualifications to the general rule that whatever is affixed to the land thereby becomes a part of the realty to which it adheres, and as between landlord and tenant the rule is applied with much leniency.

2. FIXTURES. *Buildings placed on plantation by tenant held trade fixtures removable before expiration of term.*

Buildings placed upon plantation by tenants for use as trade fixtures, with intention of removing them at termination of lease, did not become a part of the freehold, and where removable by tenants before expiration of their term.

3. WITNESSES. *Incompetency of witness to establish his own claim against estate of deceased is waived when testimony is developed as witness for adverse party.*

In action by widow against tenant holding under lease made before husband's death, placing tenant on stand for examination in reference to transactions which took place during husband's lifetime waived incompetency of witness under Code 1906, section 1917 (Hemingway's Code, section 1577), and tenant thereafter had right to make proof relative to claim against estate of deceased husband.

4. INJUNCTION. *Landowner bringing in injunction to prevent removal of buildings held not liable as for conversion of personal property on failure to establish claim.*

Landowner, who in good faith and on grounds supported by evidence brought injunction against tenants removing buildings erected on land, cannot be held liable as in cases of conversion of personal property on failure to establish claim.

5. INJUNCTION. *Proper elements of damages for wrongful suing out injunction to prevent tenants from removing buildings, stated.*

The proper elements of damages for wrongful suing out of injunction by landlord to prevent tenant from removing buildings are attorney fees, costs, and expenses of trial, reasonable rental value of buildings which defendants were prevented from removing by preliminary injunction, and for depreciation, provided depreciation was brought about by negligent use by landlord.

---

*Corpus Juris-Cyc. References; Fixtures, 26 C. J., pp. 695, n. 21; 703, n. 8; Injunction, 32 C. J., pp. 467, n. 14, 16; 469, n. 30; 470, n. 40; 471, n. 48; 472, n. 64; Witnesses, 40 Cyc., p. 2352, n. 82, New; Right of tenant to remove buildings which he has placed on leased property, see note in 15 L. R. A. (N. S.) 723; 11 R. C. L., p. 1082; 2 R. C. L., p. 1359; 5 R. C. L. Sup., p. 628.

APPEAL from chancery court of Bolivar county.

HON. C. L. LOMAX, Chancellor.

Bill by Mrs. Lillie Waldauer against W. B. Parks and another for an injunction. From a decree dissolving a

temporary injunction, dismissing the bill, and awarding defendants other relief, plaintiff appeals and defendants cross-appeal. Affirmed on direct appeal and cross-appeal and remanded.

*Walton Shields* and *Eugene E. Bogen,* for appellant.

I.   The tenants say that they have the right to remove the improvements placed upon the land cleared up because they were trade fixtures and not placed there as a permanent part of the freehold to benefit the inheritance but with the intention to remove them before the expiration of their lease.   There are many decisions, upon particular facts, some deciding that the fixtures can be removed as trade fixtures, and some deciding that they cannot, but we have found no case that goes to the extent of holding that a tenant leasing a large body of cleared land as a business venture with improvements, in the main, sufficient to cultivate the same can clear up and place improvements on additional acreage (under the circumstances shown in this record and claim the right to remove the character of improvements shown by this record to have been placed on the land so cleared up under the doctrine of trade fixtures.   As to the intention of the parties, see: *Roderick* v. *Sanborn,* 20 Am. and Eng. An. Cases 469; 11 R. C. L., Fixtures, pars. 3-6 inclusive; 3 Ency. of Law, pages 598-9 and notes.

We submit that this court should not at this time and in the absence of any authoritative adjudication heretofore made by it, declare that tenant houses and barns and cotton houses placed by a tenant upon a plantation, under the circumstances shown in this record, were trade fixtures, which appellees had a right to move.   See *Van Ness* v. *Pacard,* 2 Peters 137; *MacArthur Bros. Co.* v. *Middleton,* 71 So. 461, 75 So. (Ala.) 895.

II.   Again we submit that a defendant who, under the statute on motion to dissolve, files his written notice of damages, which is heard on final hearing without any re-

quest for amendment, is limited so far as the court's decree is concerned to the elements of damage claimed by him in his notice, which for that purpose is the pleading in the case. In other words, after rendering a decree dissolving the injunction dismissing the bill, which was a bill for injunctive relief only, and denying appellees all the elements of damage claimed, except those stated above, and rendering a decree for those, the court could not refer to a master to enable appellees to make out a case for damages not contained in the pleadings and to support which no evidence has been introduced. See *Rubber Co.* v. *Goodyear,* 9 Wallace 788, 19 U. S., L. Ed. 493; Freeman's Chancery Rep., *Planters Bank* v. *Stockman,* 502; C. J., Equity, page 608 and notes, particularly paragraph D, also page 611, par. 770; *Spears* v. *Cheatham,* 44 Miss. 64; *Bowman* v. *O'Reilly,* 31 Miss. 261; 22 Cyc. 1008, par. 8 and note 70; 19 R. C. L., pages 676-8.

Does not the case of *Duff* v. *Snider,* 54 Miss. 245, clearly indicate that the law at that time was assumed to be that a tenant of farm lands must have an agreement to remove ordinary farm buildings placed thereon in order for him to have a right to remove them. We admit that it does not so expressly decide.

Does not the evidence show in this case that most of the buildings would have to be torn down in order to remove them, and if so, does not the general rule apply that there is no right of removal except given by agreement if it is necessary to reduce to a mass of material before removing?

*Shands, Elmore & Causey,* for appellees.

I. I shall take up first the assignment of error based upon the testimony of W. B. Parks. It is contended that such testimony was not competent because it was the testimony of W. B. Parks in his own behalf and against the estates of a deceased person. It certainly will not be held by the court that the only party who has a right to object to the competency of a witness can put

that witness on the stand, compel him to answer under oath, and then if the testimony is not in accordance with the desires of such .party, change their minds about it, and object. They brought the testimony out themselves, and having; waived their right to close Park's mouth as to this conversation by asking him about it, they opened the door wide so that he would be permitted to tell the entire conversation. I do not think that this assignment need any further discussion.

II. It is next complained that the court was in error in holding that buildings placed by a tenant of agricultural lands on premises rightfully in his possession, under a contract with the owner, which buildings were reasonably necessary and proper for the successful cultivation of the lands, are trade fixtures and can be removed by the tenant at any time during his term. The leading case in America on this subject is *Van Ness* v. *Packard,* 7 L. Ed. (U. S.) 374. This case forever sets at rest the proposition that if the structure be erected for the purpose of trade or business, it is wholly immaterial how it may be affixed to the soil, and is also a clear declaration of the American common law as to fixtures. See, also, *Holmes* v. *Tremper,* 11 Am. Dec. 238; *Harkness* v. *Sears,* 62 Am. Dec. 742; *Wiggins Ferry Co.* v. *Ohio & Miss. Ry. Co.,* 35 L. Ed. 1055; *J. H. McMath et al.* v. *M. Levy & Sons,* 74 Miss. 450. At all times it remained the intention of Parks & Webb to continue to be the owner of them unless they made a sale and it was never their intention that these necessary structures and appliances should become a part of the freehold. The circumstances surrounding the parties negative the idea that such was their intention.

I think it unquestionable under section 384, Hemingway's Code, that the court had power to make a reference. I agree that the reference in this case was improper, not because the court could not refer the matter of ascertaining damages on the dissolution of the injunction, but I think the action was error in this case be-

cause the court misconceived the proper measure of damages in this case, and gave to the master as his guide such wrong rule. Furthermore, in this particular case there was no necessity for a reference when the proper measure of damages was adopted because there is no issue made by the pleadings as to the values.

It is a rule of law that if someone wrongfully takes or wrongfully detains my personal property, converting it to his own use, I am given a choice of two remedies: I may replevy the specific property, or I may waive my rights to the property itself, and sue in trover for the value of such property.

The true measure of damages in this case is the expense of defending the injunction suit, which covers solicitor's fees and expenses of attending court, and the value of the property which appellees lost as a result of the suing out of this injunction. *Bruece* v. *Welch,* 5 N. Y. Supp. 668; *Hofreiter* v. *Schwabland,* 130 Pac. 364; *Red Diamond Clothing Co.* v. *Steideman,* 152 S. W. 609. There seems to be no case in Mississippi directly in point, but the underlying principle in these cases, that is, that a man shall not be permitted by virtue of a wrongful act of his own to profit himself, is the foundation of the administration of justice in the state of Mississippi. This principle is announced in many cases which I will not take the trouble to cite to the court. I will, however, call to the court's attention the case of *Birdsong* v. *Ellis,* 62 Miss. 418.

Argued orally by *Miss Lucy Somerville,* for appellees.

ANDERSON, J., delivered the opinion of the court.

Appellant, Mrs. Lillie Waldauer, filed her bill in this case in the chancery court of the Second district of Bolivar county against appellees, Parks and Webb, for an injunction to restrain appellees from removing from the plantation of appellant in Bolivar county certain property, described generally as tenant houses, stables, barns,

and cotton houses, which had been erected by appellees on said plantation during their five-year lease thereof covering the years of 1919-1923, inclusive. On the filing of the bill a *fiat* was granted upon which a temporary injunction was issued and served. The cause was heard on bill, answer, proofs, and motion to dissolve the injunction. A decree was rendered on the final hearing, dissolving the injunction, dismissing appellant's bill, and awarding appellees as damages attorneys' fees and other expenses incurred by them in and about the trial. The court further decreed a reference of the cause to a master to take and state an account of the reasonable rental value and depreciation in value of the property, the removal of which by appellees had been enjoined, except certain property about which the trial developed there ceased to be any controversy between the parties. From that decree appellant prosecutes a direct appeal and appellees a cross-appeal.

In deciding the questions presented, we will undertake as each question is discussed to develop the controlling facts out of which it arises, instead of at the start making a statement of the whole case. We will take up, first the question whether or not appellees had the right, before the termination of their lease, to remove from the leased premises certain structures erected thereon by them, the removal of which appellant sought to enjoin.

Appellant owned a plantation in Bolivar county consisting of about three thousand acres known as the O'Reilly place. She owned it by inheritance from her husband, Louis Waldauer, who died in the summer of 1919. The lease contract involved was made by appellant's husband in the latter part of 1918 for the term of five years beginning January 1, 1919, ending therefore on the 31st day of December, 1923. The lease was made to one McDill, who, in the summer of 1919, assigned it with all his rights thereunder to appellees. The contract carried with it an option to the lessees to purchase the plantation at one hundred dollars per acre at any rent-paying period during the continuance of the lease. Dur-

ing the term of their lease appellees cleared up and put in cultivation something over two hundred acres of the plantation that was not in cultivation when the lease was made. About seventy acres of this land was what is known as green land—never had been in cultivation. The balance had been in cultivation and was grown up in woods and bushes. During their term, and principally in 1920 and 1921, appellees in order to properly cultivate the lands already in cultivation at the beginning of their term, as well as those brought into cultivation by them during the term, as above set out, erected on the plantation stables, barns, cotton houses, pumps, fences, and other improvements. The evidence shows that the principal part of these structures (which for convenience will be referred to as buildings) were made necessary on account of the additional land cleared up and brought into cultivation by appellees. As appellees' lease was expiring in the latter part of 1923, they proceeded to remove the buildings, when appellant filed the bill in this case seeking to enjoin them from doing so. Appellant's bill alleges that the buildings were affixed to the freehold and were a part thereof, and were erected by appellees for the purpose of enhancing the value of the inheritance and not with the intention of removing the same at the end of their lease, and that if appellees were permitted to remove them from the plantation, as they were attempting to do, it would cause appellant irreparable injury, etc.

Appellees answered admitting the allegations of the bill as to the unconstroverted facts, but denied that the buildings which they had erected on the lands were fixtures and had become a part of the freehold, and that they were erected for the purpose of enhancing the value of the inheritance, and averred in their answer that they were erected for trade purposes alone, namely, in order to properly and efficiently and profitably carry on their planting and mercantile operations on the leased premises, and that they were made with the intention at the time of removing the same before the termination of

their lease.. Appellees denied in their answer that the removal of the buildings would cause appellant irreparable injury.

There was a mass of testimony taken in the case. It was conflicting as to the purpose of the appellees in erecting the buildings during their term. There was little, if any, conflict in the evidence as to the necessity of the buildings for the profitable cultivation of the plantation. The conflict was with reference to whether they were erected with a view of being permanent and constituting a part of the freehold, or as trade fixtures with the intention of their removal at the end of the lease. The chancellor's finding of facts was with appellees and there was sufficient evidence to justify his finding. Appellant argues, however, that taking the facts as found by the chancellor to be true, nevertheless under the law the buildings in question were of such character as that they became a permanent part of the freehold and were therefore not removable.

The general rule is that whatever is affixed to the land thereby becomes a part of the realty to which it adheres and becomes a part of the freehold and partakes of all of its incidents and properties. To this general rule, however, there are exceptions and qualifications. The greatest relaxation of it is in favor of the tenant who has erected structures on the land during his tenancy. The general rule is applied with strictness as between heir and executor, mortgagor and mortgagee, and vendor and vendee, but with much leniency as between landlord and tenant. *Stillman* v. *Hamer,* 7 How. 421; *Terry* v. *Robins,* 5 Smedes & M. 291; *Richardson* v. *Borden,* 42 Miss. 71, 2 Am. Rep. 595; *Weathersby* v. *Sleeper,* 42 Miss. 732; *McMath* v. *Levy,* 74 Miss. 451, 21 So. 9, 523; *Van Ness* v. *Pacard,* 2 Pet. 137, 7 L. Ed. 374; *Harkness* v. *Sears,* 26 Ala. 493, 62 Am. Dec. 742.

The Van Ness case is one of the leading cases in this country on this question. The opinion of the supreme court in that case was written by Justice STORY. It is a very able and exhaustive discussion of the doctrine as

141 Miss.—40.

applies between landlord and tenant. The building which the tenant claimed the right to remove in that case was a dwelling house erected on the leased land attached to the freehold. The question, therefore, was what fixtures erected by a tenant during his term are removable by him? The court held that the question whether the dwelling house there involved was erected by the tenant for the purposes of trade and removable or not did not depend upon the form or size of the building, nor whether it had a brick foundation or not, nor whether the building was of one story or two stories that the sole question was whether it was designed for the purposes of the tenant alone, that is, the purposes of trade; that if the residence constructed by the tenant was merely an accessory for the more beneficial exercise of the business of the tenant and with a view to superior accommodations in that particular, then it did not become a part of the freehold and was removable by the tenant.

We are of the opinion that under the law as applied to the facts found by the chancellor, the buildings here involved did not become a part of the freehold of appellant, and were therefore removable by appellees before the expiration of their term.

The appellant, in an amended bill filed by leave of court, sought to set off, by way of recoupment against any decree which appellees might recover against her as damages for the wrongful suing out of the injunction, the reasonable rental value of the land which appellees had cleared and put in cultivation during their term, and also damages for waste committed by appellees in the cutting and removing and selling of merchantable timber from the leased premises.

The appellees paid appellant no rent on the lands cleared and brought into cultivation by them during the term of their lease. Appellees claimed that by virtue of a verbal agreement with appellant and her husband before his death they cleared the additional land and brought it into cultivation rent free, the cost of the clearing to be offset by its rental value; and that as to waste

appellees claimed, and their testimony tended to show, they had paid appellant for the merchantable timber which they had cut from the leased premises and sold. The chancellor in reference to these matters found the facts as contended for by appellees. We are of opinion that his finding was justified by the evidence. Appellant contends, however, that eliminating the testimony of appellee Parks, which should be done under the law, there was not sufficient evidence left to justify the chancellor's finding of facts.

Appellee Parks was placed upon the witness stand by appellant as her witness and was examined in reference to various transactions and occurrences which took place in the lifetime of appellant's husband. Among other things testified to by appellee Parks was a conversation had with appellant and her husband in the summer of 1919, in which it was agreed that appellees should proceed to clear up and bring into cultivation the additional lands on the leased premises, which they afterwards cleared up and brought into cultivation; the understanding being that the cost of clearing and the rent would offset each other. As soon as that agreement was developed by the testimony of appellee Parks, and while he was still on the stand as a witness for appellant, the latter objected to his testimony on the ground that his answers were not responsive to the questions and that the effect of such testimony was to establish his own claim against the estate of a deceased person, appellant's husband, who owned the leased premises at the time and through whom appellant acquired the same by inheritance. Conceding, as contended by appellant, that the testimony of appellee Parks with reference to the conversation between himself and appellant and her husband was not responsive to the questions propounded to him by appellant's attorney, and that it is also true that appellee Parks was incompetent as a witness, nevertheless by placing him upon the witness stand appellant waived his incompetency. Section 1917, Code 1906; Heming-

way's Code, section 1577, providing, among other things, that no person shall testify as a witness to establish his own claim against the estate of a deceased person which originated during the lifetime of such deceased person, does not make the witness incompetent alone as to conversations, and contracts, and transactions had with the deceased person. The witness is rendered incompetent not only as to those matters, but any and all facts and circumstances and transactions occurring during the lifetime of the deceased having a tendency to establish the claim of the witness against the estate of such person, whether such facts and circumstances took place with or in the presence of decedent or not. Appellee Parks as a witness on behalf of appellant was examined by appellant's attorney and testified in reference to various and sundry facts and circumstances other than the conversation referred to, which took place in the lifetime of the decedent, and which were brought out by appellant's attorney for the purpose of disproving appellee's claim against the estate of appellant's deceased husband. In placing appellee Parks upon the witness stand and bringing out such testimony, appellant waived his incompetency, as a witness, and appellees upon their examination of the witness had a right to make any proof by the witness relevant to and which had a tendency to establish the claim of appellees against the estate of appellant's deceased husband. It was not permissible under the law for appellant to use that part of the testimony of appellee Parks which was valuable to her and reject that which was prejudicial. She had to take all or none, and when she chose to take part of his testimony he became competent as to the balance.

The decree awarding damages for the wrongful suing out of the injunction fixed the damages as follows: An attorney's fee of five hundred dollars for the services of appellee's attorney in the cause, the costs and expenses incurred by appellees in preparing for and attending the trial of the cause, and the reasonable rental value

of the buildings belonging to appellees, which they were prevented from removing by the injunction as well as the depreciation in their value. The decree referred the cause to a master "to take and state an account of the amount of the rent and depreciation," with directions to report his findings to the court.

Both parties appealed from that part of the decree referring the cause to a master. Appellees contend that the decree fixing their damages for the wrongful suing out of the injunction is erroneous, in this, that the effect of the injunction was tantamount to a conversion on the part of appellant of the buildings involved, and that under the law, therefore, they were entitled to a decree against appellant for the value of the improvements as they stood at the time of their conversion, and not to their rental value and loss by depreciation. Appellees refer to authorities as to the measure of damages in cases of conversion of personal property. We think that principle is without application to the facts of this case. The record in this case shows that appellant in good faith and upon grounds supported by evidence resorted to injunctive proceedings to have her rights determined; to have the courts decide whether or not the buildings claimed by appellees belonged to them and were removable or had become a part of the freehold. We think to visit upon appellant such a penalty because of her failure to establish her claim would be under the facts and circumstances of this case unjust and inequitable.

We are of opinion that the trial court fixed in its decree the proper elements of damages for the wrongful suing out of the injunction, unless it should appear on the coming in of the master's report that the depreciation taking place in the value of the buildings in such only as would have taken place notwithstanding the injunction, in which event appellees would only be entitled to their reasonable rental value; they would not be entitled to the reasonable rental and also the value of the ordinary depreciation in the buildings. In other words,

it is only that depreciation in value of the buildings brought about by the negligent use by appellant for which the latter would be liable.

It seems that the decision of the questions already disposed of in this opinion renders it unnecessary to pass upon the propriety of the action of the trial court in refusing to permit appellant to file an amended bill for the purpose of recovering of appellees rent for the new lands brought into cultivation by them, and for waste. We deem it sufficient to say that the court found, and its finding is supported by the evidence, that appellees were to have the use of the land rent free as compensation for its clearing, and that they had paid appellant any damages she had suffered by the commission of waste. Those questions were determined by the trial court on the issue of recoupment by appellant against appelless for any damages suffered by the latter because of the wrongful issuance of the injunction.

Affirmed on direct and cross appeal, and remanded.

*Affirmed and remanded.*