# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-00778-SCT

*4-WAY ELECTRIC SERVICES, LLC*

*v.*

*HUNTCOLE, LLC, AND 4-WAY ELECTRIC CO., INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/2021 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| TRIAL COURT ATTORNEYS: | CHARLES J. SWAYZE, JR. |
| | CHARLES J. SWAYZE, III |
| | CHRISTOPHER NICKLAUS BAILEY |
| | GERALD H. JACKS |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL O. GWIN |
| | STEVEN CAVITT COOKSTON |
| | HARRIS FREDERICK POWERS, III |
| | COREY DONALD HINSHAW |
| ATTORNEYS FOR APPELLEES: | CHARLES J. SWAYZE, JR. |
| | CHARLES J. SWAYZE, III |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 06/22/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.    This appeal involves a dispute between the sellers and buyer of a commercial business that refurbishes electric transformers. Through an Asset Purchase Agreement, the seller,

Huntcole, LLC (Huntcole),[1] in exchange for more than $11 million, transferred to the buyer, 4-Way Electric Services, LLC (4-Way), all property necessary to conduct the refurbishment business.

¶2.    The Asset Purchase Agreement did not, however, include the building where the refurbishment business was located. Instead, Huntcole leased that building to 4-Way through a separate Lease.

¶3.    Three years after buying the business, 4-Way announced it was moving to a new building in a different city. It began removing large pieces of commercial equipment it believed it had purchased from Huntcole to conduct the refurbishment business. Huntcole protested and argued that because the equipment was affixed to the building, it was not transferred to 4-Way through the Asset Purchase Agreement.

¶4.    The trial court, in favor of Huntcole, ruled that the affixed equipment had been excluded from the Asset Purchase Agreement. The court granted summary judgment to Huntcole on its claims of conversion and breach of the Lease. And, after a trial on damages, the court awarded Huntcole $1,013,310 in compensatory damages, $1 million in punitive damages, and $124,065.56 in attorneys' fees.

¶5.    After review, we hold that the trial court reversibly erred by ruling that Huntcole owned the affixed equipment at the time 4-Way removed it from the building. Based on the

_____

[1] Huntcole, LLC, is the successor in interest to H&C Investments, LLC, which along with 4-Way Electric Co., Inc., entered into the Asset Purchase Agreement with 4-Way Electric Services, LLC. Seller 4-Way Electric Co., Inc., later changed its name to BobJeff, Inc.

2

plain language of the Asset Purchase Agreement, it is clear that 4-Way, by purchasing all assets necessary to conduct the refurbishment business, did in fact purchase the very equipment needed to conduct the business. The Asset Purchase Agreement also clearly designated the equipment as personal property and not as building improvements or fixtures. The fact that these large pieces of equipment were affixed to Huntcole's building does not alter these clear aspects of the Asset Purchase Agreement. Therefore, we reverse and render the trial court's holding that 4-Way committed conversion and breached the Lease by removing the equipment from the building. We likewise reverse the trial court's $1,013,310 compensatory damages award.[2]

¶6.     We also reverse and render the punitive damages award of $1 million to Huntcole. Not only did the trial judge base punitive damages on conversion, which was not proved, but Huntcole also expressly waived any right to punitive damages under the Lease.

¶7.     We do, however, affirm the trial court's judgment in part. While 4-Way had the right to remove equipment that it owned from Huntcole's building, it did not have the right to cause damage to the building in a way that breached the Lease. Instead, the Lease required 4-Way to "maintain and repair the Premises in accordance with commercially reasonable standards . . . ." Because the trial court ruled that some of the damage to Huntcole's building had left the building in a state that was not "in accordance with commercially reasonable standards[,]" we affirm in part the court's holding that 4-Way breached the Lease. We

---

[2] This award was based largely on evidence of what it would cost to replace and restore the equipment affixed to the building.

remand this case to the trial court to determine the appropriate amount of damages to repair the building in accordance with the Lease.

¶8.    We also remand the award of attorneys' fees to Huntcole. The Lease entitled Huntcole to attorneys' fees incurred by enforcing the Lease. But the amount of the attorneys' fees award was based largely on Huntcole's attorneys' efforts to recover the replacement and restoration costs for the equipment—something that Huntcole is not entitled to. We remand this case to the trial court to determine the appropriate amount of attorneys' fees for enforcing the Lease.

## FACTUAL AND PROCEDURAL HISTORY

### I.    Sale of Refurbishment Business

#### A.    *Asset Purchase Agreement*

¶9.    In 2014, Huntcole sold its refurbishment business to 4-Way through an Asset Purchase Agreement. In exchange for $11,487,000, Huntcole transferred to 4-Way all Purchased Assets. The Asset Purchase Agreement defined Purchased Assets as "all . . . properties and assets, real, personal or mixed, tangible and intangible, of every kind and description, . . . without limitation" except that "Purchased Assets shall specifically exclude the Excluded Assets."

##### 1.    *Purchased Assets*

¶10.    In Section 3.13(c) of the Asset Purchase Agreement, Huntcole warranted that the Purchased Assets included all assets "related to or material to [Huntcole's] businesses and all of the assets or properties necessary to conduct [Huntcole's] businesses as presently

4

conducted or necessary to permit [4-Way] to conduct the businesses after the Closing in the same manner as the businesses have been conducted by [Huntcole] prior to the Closing."

¶11.    Huntcole further warranted that attached to the Asset Purchase Agreement was Schedule 3.13(b), which was "a list of (i) fixed assets with a value greater than $5,000 owned or leased by, in possession of, and/or used by . . . [Huntcole] and (ii) each other tangible asset with a value greater than $5,000 owned or leased by, in the possession of, and/or used by . . . [Huntcole in its business] (*collectively, the 'Personal Property'*)." (Emphasis added.) Included in Schedule 3.13(b) and designated as Personal Property were the *very pieces of commercial equipment in dispute*, such as the twenty-ton overhead crane, a batch oven, testers, and painting and sanding booths.[3]

### 2.    Excluded Assets

¶12.    Included in the definition of Excluded Assets were "the Owned Real Property" and "those assets that are specifically listed on Schedule 1.02."[4] In its entirety, Schedule 1.02 listed the following as Excluded Assets that were not sold to 4-Way:

1.    All pictures in corporate office and two (2) golf carts.

2.    Deepwater Horizon Economic and Property Damage Claim, Claim ID 125600,

---

[3] A copy of Schedule 3.13(b) is attached to this opinion as Appendix A.

[4] The Asset Purchase Agreement defined Owned Real Property as "the real property owned by Sellers, together with all Facilities located thereon and all easements, rights of way and other appurtenances thereto." The Asset Purchase Agreement further defined Facilities as "all buildings, improvements and fixtures located on the Owned Real Property." But the Asset Purchase Agreement did not define the term "fixtures."

5

filed by 4-Way Electric Co., Inc.

3. Cash in bank and Cash equivalents.

4. Prepaid insurance.

5. Buildings.

6. *Building Improvements.*

7. Land Improvements.

. . . .

1. 2007 Lincoln Mark LT, VIN No. 5LTPW16587FJ06786.

2. 2011 Chevrolet Silverado, VIN No. 3GCPKTE33BG265202.

(Emphasis added.)

¶13. Notably, no Personal Property listed in Schedule 3.13(b) was included in this list of Excluded Assets.

### B. Lease

¶14. Simultaneous with the execution of the Asset Purchase Agreement, Huntcole and 4-Way entered into a Lease of real property in Leflore County, Mississippi, which Huntcole undisputedly retained as an Excluded Asset. Huntcole leased to 4-Way the described parcel of land along with "all rights of way and easements appurtenant thereto, together with the buildings and all other improvements, structures and fixtures located thereon, including (without limitation) plumbing fixtures, HVAC equipment, electrical fixtures, compressors, condensers and roof-mounted equipment . . . ." But the Lease required 4-Way to pay "any and all taxes levied or assessed and which become payable during the Term hereof upon all

6

inventory, or merchandise, equipment, furniture, *fixtures*, or other personal property located in the Premises owned by [4-Way]." (Emphasis added.)

¶15. The Lease further required 4-Way to maintain the building and improvements and surrender them in that maintained condition. But the Lease permitted 4-Way to "make, or allow to be made, without [Huntcole's] consent, any alterations, modification, or improvements to the Premises . . . in [4-Way's] reasonable discretion."

¶16. In the event of a default, Huntcole was entitled to recover from 4-Way:

> an amount necessary to compensate [Huntcole] for all the detriment proximately caused by [4-Way's] failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, including (without limitation) reimbursement of [Huntcole's] reasonable legal fees and expenses incurred in the enforcement of this Lease and costs incurred by [Huntcole] in restoring the Premises to the condition required by this Lease.

¶17. Both Huntcole and 4-Way "agree[d] to waive and release any and all rights that they may have, respectively, to any claim or claims against the other party hereto for special, *punitive*, consequential and/or exemplary damages." (Emphasis added.)

## II.     Litigation

### A.     Complaint and Counterclaim

¶18. In 2017, 4-Way announced that it was moving its transformer-refurbishment operation to a facility in Lexington, Mississippi. 4-Way began detaching and removing all of the commercial equipment from Huntcole's Leflore County building. Through counsel, Huntcole asserted that it still owned all of the equipment affixed to its building and demanded that 4-Way not remove any of it. When 4-Way refused, arguing that it had purchased the equipment

7

through the Asset Purchase Agreement, Huntcole filed suit.

¶19.    Huntcole sought a declaratory judgment that the disputed commercial equipment belonged to it as building improvements and fixtures excluded from the Asset Purchase Agreement. Huntcole alleged conversion, embezzlement, and breach of the Lease, among other claims. Huntcole requested compensatory damages, attorneys' fees, and punitive damages. 4-Way responded with a counterclaim, asserting that Huntcole had breached the Asset Purchase Agreement—namely, Huntcole's warranty to transfer to 4-Way all property necessary to conduct the transformer-refurbishment business.

### B.    Motions for Summary Judgment

¶20.    Huntcole and 4-Way filed competing motions for summary judgment. Huntcole moved for partial summary judgment on the issue of 4-Way's alleged liability. Huntcole argued that, based on the clear language of the Asset Purchase Agreement and the Lease, the pieces of equipment 4-Way removed were fixtures and building improvements that Huntcole retained as Excluded Assets under the Asset Purchase Agreement. Therefore, Huntcole argued, 4-Way had no right to remove that equipment.

¶21.    4-Way also sought summary judgment on the equipment-ownership question. Like Huntcole, 4-Way asserted that the Asset Purchase Agreement was clear and unambiguous. But 4-Way pointed out that the Asset Purchase Agreement undeniably transferred to it all disputed pieces of commercial equipment listed in Schedule 3.13(b), which the Asset Purchase Agreement categorized as Personal Property and not as building improvements.

¶22.    Following a hearing, the trial court granted Huntcole's motion and denied 4-Way's

motion. The court determined that there were no material facts in dispute and that the Asset Purchase Agreement and the Lease were clear and unambiguous. According to the court, the Asset Purchase Agreement did not transfer Excluded Assets, and building improvements were listed as Excluded Assets. The court drew on the common law definitions of fixtures and building improvements and reasoned that the pieces of equipment were "certainly building improvements, if not in fact fixtures." It did so because, as Huntcole's supporting affidavits attested, the equipment was attached to the building.

¶23. The trial court held that 4-Way had committed conversion when it wrongfully removed the disputed equipment from the building. The court also held that 4-Way had breached the Lease's requirement to maintain the building and surrender it in that maintained condition. A trial was set to resolve all remaining issues, including the amount of damages.

### C. Motion in Limine

¶24. Before trial, 4-Way filed a motion in limine and sought partial summary judgment on Huntcole's punitive damages claim. 4-Way sought to exclude any evidence, testimony, or argument at trial regarding Huntcole's claims for punitive damages. It also requested summary judgment on Huntcole's claims for special, punitive, consequential, and/or exemplary damages because all such claims were barred pursuant to the Lease. 4-Way based its argument on Section 30.10 of the Lease, which provided that Huntcole and 4-Way "hereby acknowledge and agree to waive and release any and all rights that they may have, respectively, to any claim or claims against the other party hereto for special, punitive, consequential and/or exemplary damages."

9

¶25. The trial court rejected 4-Way's argument. It ruled that the punitive damages waiver was unenforceable due to Section 24.3 of the Lease. The court determined that the provision of Section 24.3 entitling Huntcole to recover an amount sufficient to compensate for any detriment proximately caused by 4-Way's default trumped the more general damages waiver in Section 30.10.

### D. Final Ruling

¶26. After a bench trial, the trial court awarded Huntcole $1,013,310 in damages for conversion and breach of the Lease. This amount represented, in the court's view, the cost of replacing and restoring the equipment and returning the building to the condition in which 4-Way had leased it. The court also awarded Huntcole $1 million in punitive damages and $124,065.56 in attorneys' fees.

## STATEMENT OF THE ISSUES

¶27. 4-Way raises two issues on appeal: whether the trial court erred by holding that 4-Way converted property, and whether the trial court erred by not enforcing the Lease's punitive damages waiver.

## DISCUSSION

### I. Whether the trial court erred by holding that 4-Way converted property.

¶28. The key question in this case is whether Huntcole owned the disputed pieces of equipment at the time when 4-Way removed them from Huntcole's building. Indeed, "ownership is an essential element of conversion." *Cmty. Bank, Ellisville, Miss. v. Courtney*,

884 So. 2d 767, 773 (Miss. 2004). As this Court held in *First Investors Corp. v. Rayner*, 738 So. 2d 228, 235 (Miss. 1999):

> [T]o maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiff's rights, or else a withholding of the possession under a claim of right or title inconsistent with that of the plaintiff . . . .

After de novo review, we hold that, based on the plain language of the Asset Purchase Agreement, Huntcole no longer owned the equipment it claimed 4-Way had converted. *See Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (Miss. 2012) ("A de novo standard of review is applied to questions of contract construction." (citing *A&F Props., LLC v. Madison Cnty. Bd. of Supervisors*, 933 So. 2d 296, 301 (Miss. 2006))).

### A.     The Asset Purchase Agreement specifically listed the equipment.

¶29.    "This Court's standard regarding review and interpretation of contracts is well-established." *Id.* If a contract is unambiguous, "then it must be enforced as written." *Id.* (citing *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003)). And, "[w]hen construing a contract, we read the contract as a whole, so as to give effect to all of its clauses." *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992) (citing *Newell v. Hinton*, 556 So. 2d 1037, 1042 (Miss. 1990); *Glanz Contracting Co. v. Gen. Elec. Co.*, 379 So. 2d 912, 917 (Miss. 1980)).

¶30.    The Asset Purchase Agreement is clear and unambiguous. Huntcole expressly warranted that it was transferring to 4-Way the commercial equipment necessary to conduct

11

the transformer-refurbishment business. And the equipment at issue was *specifically* listed as Personal Property in Schedule 3.13(b).[5] To accept Huntcole's argument and classify the affixed equipment as building improvements would render Huntcole's express warranty meaningless. Indeed, the very purpose of the Asset Purchase Agreement—to sell the transformer-refurbishment business—would be defeated. Thus, the only interpretation that gives effect to all provisions in the Asset Purchase Agreement is that Huntcole was selling the equipment as personal property to 4-Way.

### B.    The pieces of equipment are trade fixtures.

¶31.    The trial court based its ruling on the general rule that if a piece of personal property is affixed, it becomes part of the realty. ***Waldauer v. Parks***, 141 Miss. 617, 106 So. 881, 882 (1926). But there are pertinent "exceptions and qualifications" to this general rule, *especially* when it comes to commercial tenants. ***Id.*** This Court has acknowledged that "trade fixtures *which are personal property* are an exception to this general rule." ***Wright v. Rub-a-Dub Car Wash, Inc.***, 740 So. 2d 891, 896 (Miss. 1999) (emphasis added). And "for well over a century, [this Court has] accepted that lessor and lessee may agree among themselves regarding title to and removal of improvements and may reflect their wishes in formal agreements this Court will enforce." ***Simmons v. Bank of Miss.***, 593 So. 2d 40, 42 (Miss. 1992) (citing ***Bondafoam, Inc. v. Cook Constr. Co.***, 529 So. 2d 655, 658 (Miss. 1988); ***Richardson v. Borden***, 42 Miss. 71 (1868)).

---

[5] *See* Appendix A.

¶32.   Huntcole and 4-Way agreed that the pieces of equipment were trade fixtures and, thus, personal property. *Wright*, 740 So. 2d at 896. In fact, the Asset Purchase Agreement expressly designated the disputed pieces of equipment as Personal Property. *See* Appendix A. Notably, none of this Personal Property was included in the list of Excluded Assets. So, as in *Simmons*, in which a bank that leased real property was allowed to remove *an entire building affixed to the land* based on the agreement with the commercial agreement landowner, 4-Way could remove the equipment it had clearly purchased from Huntcole. *Simmons*, 593 So. 3d at 43.

### C.   The Lease cannot be used to prove Huntcole's ownership.

¶33.   In holding that 4-Way converted the affixed equipment, the trial court also relied on the Lease, which stated that Huntcole was leasing the building and fixtures to 4-Way. But it is without question that Huntcole could only lease what it had retained in the Asset Purchase Agreement. And we hold that the Asset Purchase Agreement clearly conveyed the affixed equipment to 4-Way. Therefore, the Lease cannot be used to prove that Huntcole retained ownership of the equipment. In fact, the Lease supports that 4-Way owned the equipment because it required 4-Way to pay property taxes on any fixtures in the building that 4-Way owned, implicitly acknowledging that the building could contain fixtures owned by 4-Way.

### D.   Huntcole failed to prove conversion.

¶34.   Based on the plain language of the Asset Purchase Agreement, Huntcole failed to

13

meet its burden to prove conversion. 4-Way clearly purchased the subject equipment through the Asset Purchase Agreement in 2014 and, thus, did not convert that same equipment when removing it from Huntcole's building in 2017. Therefore, we reverse the trial court's decision holding that 4-Way converted the equipment and render judgment in favor of 4-Way.

### E. Huntcole is entitled to some compensatory damages.

¶35. Because we reverse and render the trial court's conversion holding, we also reverse the trial court's award of $1,013,310 in compensatory damages. This award was based largely on the cost to replace and restore the equipment in the building, which Huntcole is not entitled to. Huntcole is, however, entitled to damages for 4-Way's breach of the Lease.

¶36. The Lease between Huntcole and 4-Way was a contract. "A breach-of-contract [claim] has two elements: (1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'" *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012)). The validity of the Lease is not in dispute. The question is whether 4-Way breached it.

¶37. In holding that 4-Way breached the Lease, the trial court relied on the building-maintenance provision. Under that provision, 4-Way was required to "maintain and repair the premises in accordance with commercially reasonable standards" during the term of the Lease and, upon expiration or termination of the Lease, to "surrender the premises to the landlord in this condition." In the event of default, Huntcole was entitled to recover from 4-Way "an amount necessary to compensate [Huntcole] for all the detriment proximately

14

caused by [4-Way's] failure to perform its obligations under this Lease." The trial court determined that 4-Way's removal of the equipment, in and of itself, violated this provision. The court also determined that damage done to the building during the removal process violated this provision.

¶38.    We hold that 4-Way's removal of the equipment, in and of itself, did not constitute a breach of the Lease. Because 4-Way owned the equipment, it had the right to remove it. Further, the Lease permitted 4-Way to make alterations to the building without Huntcole's consent. Thus, we reverse the summary-judgment holding that 4-Way's removal of the equipment, in and of itself, breached the Lease.

¶39.    We affirm, however, the trial court's holding that damage done to the actual building constituted a breach of the Lease. At trial, Huntcole presented evidence that the removal process caused damage to the building's roof, floor, and electrical wiring. To the extent that this damage left the building in a condition that was not "in accordance with commercially reasonable standards[,]" Huntcole is entitled to recover damages. Therefore, we remand this case to the trial court to determine the amount of damages necessary to compensate Huntcole for 4-Way's failure to "surrender the premises" according to "commercially reasonable standards." The cost to replace and restore any of the disputed pieces of equipment shall be excluded from the award.

### F.    Huntcole is entitled to some attorneys' fees.

¶40.    Under the Lease, Huntcole was entitled to "reimbursement of [its] reasonable legal fees and expenses incurred in the enforcement of this Lease . . . ." The trial court awarded

15

Huntcole $124,065.56 in attorneys' fees. But the bulk of the attorneys' fees Huntcole incurred was based on its claim that removing the equipment, in and of itself, was a breach of the Lease. Because the equipment removal was not a breach of the Lease, we reverse the attorneys' fees award and remand this case to the trial court to determine the appropriate amount of attorneys' fees for enforcement of the Lease. Attorneys' fees incurred by Huntcole in pursuit of its claim that removing the equipment, in and of itself, was a breach of the Lease shall be excluded from the award.

## II. Whether the trial court erred by not enforcing the Lease's punitive damages waiver.

¶41. 4-Way argues that the $1 million punitive damages award should have been precluded by the Lease's punitive damages waiver in Section 30.10. Under Section 30.10, Huntcole and 4-Way "agree[d] to waive and release any and all rights that they may have, respectively, to any claim or claims against the other party hereto for special, *punitive*, consequential and/or exemplary damages." (Emphasis added.) 4-Way made this same argument before the trial court. The trial court, however, did not give effect to the waiver because it determined that Section 30.10 was trumped by the more specific damages provision in Section 24.3 of the Lease.

¶42. Section 24.3 entitled Huntcole to compensation "for all the detriment proximately caused by [4-Way's] failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom," including legal fees and costs to enforce the Lease. What Section 24.3 provided was a right for Huntcole to recover

16

*compensatory*, or actual, damages. *See Damages*, Black's Law Dictionary (11th ed. 2019) (defining *actual damages* as "[a]n amount awarded to a complainant to compensate for proven injury or loss; damages that repay actual losses" and defining *compensatory damages* as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered"). But "[p]unitive damages under Mississippi law are not to be awarded to a party for compensation of an injury . . . ." **Gordon v. Nat'l States Ins. Co.**, 851 So. 2d 363, 366 (Miss. 2003) (citing **Ciba-Geigy Corp. v. Murphree**, 653 So. 2d 857, 874 (Miss. 1994)). Instead, they "are to be awarded as *punishment* for the defendant's wrongdoings so that others may be deterred from similar offenses." *Id.* (emphasis added) (citing **Murphree**, 653 So. 2d at 874). Section 24.3 in no way conflicts with the punitive damages waiver in Section 30.10. Therefore, the trial court erred by determining that Section 24.3 trumped Section 30.10 and by not enforcing the Lease's punitive damages waiver.

¶43. The trial court also based its punitive damages award to Huntcole on conversion, which Huntcole failed to prove. Based on the punitive damages waiver in the Lease and Huntcole's failure to prove conversion, we reverse the $1 million award of punitive damages in full and render judgment in favor of 4-Way.

### CONCLUSION

¶44. For these reasons, we reverse the trial court's conversion holding and render judgment in favor of 4-Way. We also reverse the trial court's $1,013,310 compensatory damages award and $124,065.56 attorneys' fees award. Finally, we reverse the trial court's $1 million punitive damages award and render judgment in favor of 4-Way.

17

¶45. We affirm in part and reverse in part the trial court's holding that 4-Way breached the Lease. Accordingly, the trial court shall determine the appropriate amount of damages necessary to compensate Huntcole for 4-Way's failure to "surrender the premises" according to "commercially reasonable standards." The cost to replace and restore any of the disputed pieces of equipment shall be excluded from the award. Additionally, the trial court shall determine the appropriate amount of attorneys' fees incurred in Huntcole's enforcement of the Lease's building-maintenance provision. Attorneys' fees incurred by Huntcole in pursuit of its claim that removing the equipment, in and of itself, was a breach of the Lease shall be excluded from the award.

¶46. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

**KITCHENS AND KING, P.JJ., COLEMAN, ISHEE AND GRIFFIS, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BEAM AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶47. I agree that Huntcole clearly sold the commercial equipment to 4-Way through the Asset Purchase Agreement.[6] So the majority is correct that Huntcole's conversion claim fails as a matter of law.

¶48. I also agree that Huntcole is entitled to some compensation based on its successful claim that 4-Way breached the maintenance provision of the lease. While the removal of the

---

[6] Huntcole admitted as much in its 2014 federal tax returns.

18

equipment itself was not a breach of the lease, Huntcole presented evidence that in the process of removal 4-Way damaged the building's roof, floor, and electrical wiring. Further, there was evidence that, due to the state in which 4-Way surrendered the building, Huntcole could not re-lease the building until these repairs were made, resulting in months of lost rent.

¶49. The majority holds that Huntcole is entitled to recover "the amount of damages necessary to compensate Huntcole for 4-Way's failure to 'surrender the premises' according to 'commercially reasonable standards.'" Maj. Op. ¶ 39 (quoting the Lease). While the majority is not wrong, the majority's holding sidesteps the reality that these damages have already been proved. The trial judge ruled that Huntcole was entitled to damages for the proven costs to repair the building—the roof, the floor, the walls, and the electrical wiring—so that it could be re-leased, as well as the amount of lost rent proximately caused by the need for such repairs. On remand, the issue of damages should be the simple task of separating out the amount of the costs of repairs and lost rent from the prior damages award that erroneously included the cost to replace the commercial equipment.

**BEAM AND CHAMBERLIN, JJ., JOIN THIS OPINION.**

19

# Appendix A

**Title to and Condition of Assets and Properties**

(b)

See attached.

(c)

None.

(d)

| Bank | Account | Signatories | POAs |
|------|---------|-------------|------|
| Planters Bank Greenwood, MS | General Account, ██████ | Ellen McKibben Jeff Coleman Robert Hunter | None. |
| Planters Bank Greenwood, MS | Payroll Account, ██████ | Ellen McKibben Jeff Coleman Robert Hunter | None. |
| Planters Bank Greenwood, MS | Scrap Account, ██████ | Ellen McKibben Jeff Coleman Robert Hunter | None. |
| Bank of Commerce Greenwood, MS | General Account, ██████ | Ellen McKibben Jeff Coleman Robert Hunter | None. |

20

29069  4-WAY ELECTRIC CO., INC.

**Template Tax Asset Detail**

05/28/2014  8:43 AM

64-0832018
FYE: 12/31/2014

| Asset | d t | Property Description | Date In Service | Tax Cost | Tax Sec 179 Exp | c | Tax Bonus Amt | Tax Prior Depreciation | Tax Current Depreciation | Tax End Depr | Tax Net Book Value | Tax Method | Tax Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Group: 1510-00 BUILDING** | | | | | | | | | | | | | |
| | | 1510-00 BUILDING | | | | | | | | | | | |
| **Group: 1520-BUILDING IMPROVEMENT** | | | | | | | | | | | | | |
| | | 1520-BUILDING IMPROVEMENT | | | | | | | | | | | |
| | | 1530-SIGN | | | | | | | | | | | |
| 12 | | AIR COMPRESSOR - DIXIE AUTO SHOP | 6/17/03 | 5,724.50 | 5,724.50 | | 0.00 | 5,724.50 | 0.00 | 5,724.50 | 0.00 | 200DB | 7.0 |
| 31 | | CRANE & BED INSTALLED-2001 F550 T | 1/02/01 | 27,125.06 | 8,234.43 | | 0.00 | 27,125.06 | 0.00 | 27,125.06 | 0.00 | 200DB | 5.0 |
| 35 | | EQUIPMENT | 3/31/94 | 5,800.00 | 0.00 | | 0.00 | 5,800.00 | 0.00 | 5,800.00 | 0.00 | 200DB | 7.0 |
| 47 | | MODEL GP50-LP 12000 LB CATERPILL/ | 4/20/00 | 38,306.00 | 0.00 | | 0.00 | 38,306.00 | 0.00 | 38,306.00 | 0.00 | 200DB | 7.0 |
| 51 | | OIL HANDLING EQUIPMENT - JOHN W | 6/27/03 | 6,500.00 | 6,500.00 | | 0.00 | 6,500.00 | 0.00 | 6,500.00 | 0.00 | 200DB | 7.0 |
| 62 | | TEST EQUIPMENT | 3/31/94 | 16,500.00 | 16,500.00 | | 0.00 | 16,500.00 | 0.00 | 16,500.00 | 0.00 | 200DB | 7.0 |
| 64 | | TEST EQUIPMENT | 10/31/03 | 44,143.50 | 39,771.84 | | 2,185.83 | 44,143.50 | 0.00 | 44,143.50 | 0.00 | 200DB | 7.0 |
| 65 | | TEST EQUIPMENT | 9/19/94 | 13,349.00 | 0.00 | | 0.00 | 13,349.00 | 0.00 | 13,349.00 | 0.00 | 200DB | 7.0 |
| 67 | | TEST PANELS | 9/30/95 | 16,000.00 | 3,284.00 | | 0.00 | 16,000.00 | 0.00 | 16,000.00 | 0.00 | 200DB | 7.0 |
| 69 | | TRAILER | 6/08/01 | 13,682.28 | 13,682.28 | | 0.00 | 13,682.28 | 0.00 | 13,682.28 | 0.00 | 200DB | 7.0 |
| 73 | | YALE FORKLIFT - BRIGGS EQUIPMENT | 7/15/03 | 8,667.00 | 8,667.00 | | 0.00 | 8,667.00 | 0.00 | 8,667.00 | 0.00 | 200DB | 7.0 |
| 86 | | BURTON'S COMPUTERS - ADVANTA | 8/28/06 | 5,001.18 | 5,001.18 | . | 0.00 | 5,001.18 | 0.00 | 5,001.18 | 0.00 | 200DB | 5.0 |
| 98 | | DELL COMPUTER EQUIP | 5/18/07 | 6,445.94 | 6,445.94 | | 0.00 | 6,445.94 | 0.00 | 6,445.94 | 0.00 | 200DB | 5.0 |
| 100 | | OFFICE FURNITURE | 7/09/07 | 6,057.86 | 6,057.86 | | 0.00 | 6,057.86 | 0.00 | 6,057.86 | 0.00 | 200DB | 7.0 |
| 108 | | GENERATORS/PUMPS QTC | 7/20/09 | 5,136.00 | 5,136.00 | | 0.00 | 5,136.00 | 0.00 | 5,136.00 | 0.00 | 200DB | 5.0 |
| 122 | | OCR 8015 RECLOSER TEST SET | 6/01/10 | 10,000.00 | 10,000.00 | | 0.00 | 10,000.00 | 0.00 | 10,000.00 | 0.00 | 200DB | 7.0 |
| 130 | | TESTBOARD - WHITE'S | 7/31/11 | 9,485.29 | 9,485.29 | | 0.00 | 9,485.29 | 0.00 | 9,485.29 | 0.00 | 200DB | 7.0 |
| 135 | | HI POT TESTER HIGH VOLTAGE | 11/23/11 | 10,673.00 | 10,673.00 | | 0.00 | 10,673.00 | 0.00 | 10,673.00 | 0.00 | 200DB | 7.0 |
| 139 | | COMPUTER PROGRAM | 11/05/07 | 6,000.00 | 6,000.00 | | 0.00 | 6,000.00 | 0.00 | 6,000.00 | 0.00 | 200DB | 7.0 |
| 147 | | STEP VOLTAGE REGULATOR PROGRAN | 6/17/08 | 9,349.00 | 0.00 | | 4,674.50 | 9,349.00 | 0.00 | 9,349.00 | 0.00 | Amort | 3.0 |
| 151 | | ORTMASTER (RECLOSER DEPT) | 2/06/12 | 6,962.10 | 6,962.10 | | 0.00 | 6,962.10 | 0.00 | 6,962.10 | 0.00 | 200DB | 7.0 |
| 164 | | OVEN | 10/15/12 | 48,280.88 | 48,280.88 | | 0.00 | 48,280.88 | 0.00 | 48,280.88 | 0.00 | 200DB | 7.0 |
| 165 | | PAINTING & SANDING BOOTHS | 10/15/12 | 49,379.00 | 49,379.00 | | 0.00 | 49,379.00 | 0.00 | 49,379.00 | 0.00 | 200DB | 7.0 |
| 166 | | PAINTING STATIONS & EQUIP | 10/15/12 | 27,055.01 | 27,055.01 | | 0.00 | 27,055.01 | 0.00 | 27,055.01 | 0.00 | 200DB | 7.0 |
| 168 | | SHEAR | 10/15/12 | 5,096.29 | 5,096.29 | | 0.00 | 5,096.29 | 0.00 | 5,096.29 | 0.00 | 200DB | 7.0 |
| 169 | | AIR COMPRESSORS | 10/15/12 | 18,381.00 | 18,381.00 | | 0.00 | 18,381.00 | 0.00 | 18,381.00 | 0.00 | 200DB | 7.0 |
| 170 | | 20 TON OVERHEASD CRANE | 10/15/12 | 133,500.00 | 133,500.00 | | 0.00 | 133,500.00 | 0.00 | 133,500.00 | 0.00 | 200DB | 7.0 |
| 176 | | CPC TESTBOARD | 10/15/12 | 80,810.00 | 80,810.00 | | 0.00 | 80,810.00 | 0.00 | 80,810.00 | 0.00 | 200DB | 7.0 |
| 177 | | CPC TESTBOARD UPGRADE | 1/15/13 | 38,425.19 | 38,425.19 | | 0.00 | 38,425.19 | 0.00 | 38,425.19 | 0.00 | 200DB | 7.0 |

21

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 178 | SHELVING FOR NEW PARTS ROOM | 5/01/13 | 5,000.00 | 5,000.00 | | 0.00 | 5,000.00 | 0.00 | 5,000.00 | 0.00 200DB | 7.0 |
| 184 | TENNANT FLOOR SCRUBBER | 8/13/13 | 6,149.00 | 6,149.00 | | 0.00 | 6,149.00 | 0.00 | 6,149.00 | 0.00 200DB | 7.0 |
| 186 | BRIDGE CRANE | 11/19/13 | 5,073.50 | 5,073.50 | | 0.00 | 5,073.50 | 0.00 | 5,073.50 | 0.00 200DB | 7.0 |
| 188 | OMICRON CMC 356 | 1/27/14 | 37,685.96 | 25,000.00 | c | 0.00 | 0.00 | 26,812.28 | 26,812.28 | 10,873.68 200DB | 7.0 |
| | 1540-EQUIPMENT | | 725,743.54 | 610,275.29 | c | 6,860.33 | 688,057.58 | 26,812.28 | 714,869.86 | 10,873.68 | |

**Group: 1560-VEHICLES**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 76 | 2001 FORD F-550 SD | 1/08/00 | 37,256.28 | 0.00 | | 0.00 | 37,256.28 | 0.00 | 37,256.28 | 0.00 200DB | 5.0 |
| 79 | 2003 F-350 SD - TRUSTMARK | 6/03/03 | 37,226.56 | 0.00 | | 18,613.28 | 37,226.56 | 0.00 | 37,226.56 | 0.00 200DB | 5.0 |
| | 1560-VEHICLES | | 74,482.84 | 0.00 | c | 18,613.28 | 74,482.84 | 0.00 | 74,482.84 | 0.00 | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Grand Total | 800,226.38 | 610,275.29 | ## | 25,473.61 | 762,540.42 | 26,812.28 | 789,352.70 | 10,873.68 | |